*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
May 27, 2021

Plaintiff-Appellee,

v

Nos. 348347; 348350
Wayne Circuit Court

BERNARD ANTOINE HARDRICK,

LC Nos. 15-007481-01-FH;
15-008119-01-FH

Defendant-Appellant.

Before: RONAYNE KRAUSE, P.J., and RIORDAN and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals as of right his convictions after a jury trial of one count of conducting a criminal enterprise, MCL 750.159i(1), and three counts of false pretenses ($1,000 or more but less than $20,000), MCL 750.218(4)(a). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 20 to 35 years in prison for each conviction. For the reasons provided below, we affirm defendant's convictions, but we remand to the trial court for the ministerial task of correcting clerical errors in the judgments of sentence.

## I. FACTS AND HISTORY

For the most part, the underlying facts of these cases are straightforward and were admitted by defendant at trial. Within a couple of weeks of being paroled from prison on June 16, 2015, defendant found so-called "abandoned" or vacant homes in Wayne County. His plan was to utilize the doctrine of "adverse possession" to claim an "interest" in the properties and then sell the properties.[1] To effectuate this plan, quitclaim deeds were created, either by him or at his direction, that showed the properties being transferred from himself to one of his companies. Defendant recorded these deeds with the Wayne County Register of Deeds. Defendant would then list the properties on the Craigslist website for sale or lease to own. When prospective buyers inquired

---

[1] Defendant explained that, while imprisoned, he learned about adverse possession while conducting legal research in the law library.

about the properties, defendant met them at the properties, told them he was the owner, and showed them the quitclaim deeds as "proof" that he held title.

Defendant was originally tried in 2016 and convicted of nine counts of forgery of a document affecting real property, MCL 750.248b, nine counts of uttering and publishing a document affecting real property, MCL 750.249b, three counts of using false pretenses to obtain money in an amount of $1,000 or more but less than $20,000, MCL 750.218(4)(a), and one count of conducting a criminal enterprise, MCL 750.159i(1). In a prior appeal, this Court reversed the convictions of forgery and uttering and publishing because the quitclaim deeds that were at the heart of those charged crimes were not "falsely made." *People v Hardrick*, unpublished per curiam opinion of the Court of Appeals, issued December 19, 2017 (Docket Nos. 333568 & 333898), p 5. In other words, the instruments "did not purport to be anything other than quitclaim deeds conveying *whatever interest defendant had in the property* to his company or vice versa." *Id*. (emphasis added). The fact that defendant held no legal interest in the properties did not affect the authenticity of the deeds.

This Court also held that there was sufficient evidence to support defendant's convictions of conducting a criminal enterprise and false pretenses, *id*. at 3-5, but still reversed those convictions and remanded to the trial court for a new trial on those four counts because defendant's right to self-representation was violated, *id*. at 6-7. Accordingly, this Court remanded for a new trial on the charges of conducting a criminal enterprise and three counts of using false pretenses to obtain money in an amount of $1,000 or more but less than $20,000. *Id*. at 9.

Although defendant stated that he had recorded deeds for 21 properties, the retrial primarily involved five properties: 18300 Glastonbury in Detroit, 3290 Sherbourne in Detroit, 13591 Lenore in Redford, 10065 West Outer Drive in Detroit, and 12661 Fordline in Southgate.[2] Evidence was presented that at the time of the transactions at issue, defendant had *no* property interest in the various properties. Indeed, during the summer of 2015, after their respective foreclosures, the following people or banks owned the various properties: M&T Bank owned the Glastonbury property after a March 15, 2012 sheriff's sale; Bank of America owned the Sherbourne property after a February 26, 2015 sheriff's sale; Chase Bank owned the Lenore property after a June 14, 2012 sheriff's sale; MetLife Bank owned the Outer Drive property after a January 17, 2013 sheriff's sale; and Cynthia Bowman had been the owner of the Fordline property since November 26, 1993. There was no evidence that any of these owners transferred any interest in the properties to defendant or his companies.

Defendant did not deny recording quitclaim deeds for these various properties and informing prospective purchasers that he was the "owner" before "selling" the properties to these

---

[2] Specifically, a fifth amended information, which was the most current information leading up to the retrial, alleged in Count 1 that defendant had conducted a criminal enterprise with the predicate offenses being five instances of engaging in false pretenses for the Glastonbury, Sherbourne, Lenore, West Outer Drive, and Fordline properties. In Count 2, defendant was charged with false pretenses related to the Glastonbury property. In Count 3, defendant was charged with false pretenses related to the Sherbourne property. And in Count 4, defendant was charged with false pretenses related to the Lenore property.

individuals. His defense at trial was that no deceit was involved because he thought that he was following the law of adverse possession. While defendant acknowledged that adverse possession takes 15 years to obtain "clear title," he asserted that he thought that before that time elapsed, he still had "the right to exercise powers and privileges of ownership."

The jury did not believe defendant and found him guilty as charged of one count of conducting a criminal enterprise and three counts of obtaining property valued at $1,000 or more but less than $20,000 by false pretenses.

## II. RIGHT TO BE PRESENT AND TO BE REPRESENTED

Defendant argues that a new trial is required because his right to be present and his right to representation were violated when the trial court removed him from the courtroom during a portion of the prosecutor's closing argument and during the prosecutor's rebuttal argument. We disagree.

During the prosecutor's closing arguments, defendant, representing himself, interrupted no fewer than 10 times. Each time defendant took exception with something the prosecutor said and attempted to place an objection on the record. After the third interruption, the trial court stated:

> I can't tell the prosecutor how to conduct her closing argument as I can't tell you how to conduct yours, as long as it is orderly and it reflects what the evidence in the case said.
>
> So please don't interrupt anymore. Closing arguments are not evidence.

Despite the trial court's admonishment to not interrupt anymore during closing arguments, defendant interrupted the prosecutor's very next statement, which characterized defendant as "scamming victim after victim." The court then told defendant to "[h]old your objections until the end of the arguments and then we'll make a record. Keep track of them and we'll make a record." The court further noted that if defendant continued to interrupt, it was going to deduct time from his closing arguments.

Undeterred, defendant interrupted the prosecutor's argument another seven times, for a total of 10 times. After this tenth interruption, the trial court excused the jury and had defendant removed, saying:

> Mr. Hardrick, I told you at the beginning of this trial that if you continued, I almost excluded you from being present in your own trial and that you would be back there in the cell listening to it over a microphone.
>
> You have continually tried to make a mockery of the legal system, of the court system. You don't respect yourself, you don't respect the citizens who are present, the Judge's staff, you don't respect anyone. You claim to be as good a lawyer as any lawyer who has a certification with . . . that training but you don't respect it. So you are really showing us a large degree of confusion. But I allowed you to represent yourself because I was convinced that you could do that and you have done that. But you are disobeying this court order. I told you yesterday when you were on the stand not to talk about the appellate process in this case. You still

told the jury that the case has been appealed, that the case had been reversed and the Supreme Court had done this, this and this, and I continually told you not to do it. I said if you continued to do it I was going to discontinue your testimony. I didn't discontinue your testimony. I let you go on and disrespect this Court and disregard this Court, okay.

Today I keep telling you that these are closing arguments, they're not evidence. Don't improperly interrupt the prosecutor when she's talking about what the evidence showed and what the prosecutor's position is on this case. You will have an opportunity to do it when we bring you back form the cell.

So I am going to exclude you from this trial right now. We are going to set up the microphone in the cell so we can finish this closing argument. When it is your turn, we'll bring you out. If you disregard the Court's order at that point, then I am going to discontinue your closing arguments. I am going to charge the jury and then a higher court can decide if I was right or wrong.

Let's take him back to the back.[3]

Although defendant was removed, standby counsel remained at defense table.

The prosecutor subsequently finished the last portion of her closing argument without interruption, which encompassed approximately three pages in the transcript. After defendant was brought back in and conducted his closing argument, he was led out again for the prosecutor's rebuttal argument, which encompassed about two pages of the transcript.[4]

On appeal, defendant claims that his right to be present and his right to representation were violated. Because defendant never argued in the trial court that his constitutional rights were violated, this issue is not preserved. See *People v Cameron*, 291 Mich App 599, 617; 806 NW2d 371 (2011). Unpreserved constitutional issues are reviewed for plain error affecting substantial rights. *People v Wiley*, 324 Mich App 130, 150; 919 NW2d 802 (2018). Thus, to avoid forfeiture, defendant must show that an error occurred, that the error was plain, i.e., clear or obvious, and that the error affected his substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). This last requirement generally requires a showing of prejudice, which means showing "that the error affected the outcome of the lower court proceedings." *Id*.

"The right to be present at one's trial is a fundamental right guaranteed the defendant by both statute, [MCL 768.3], and as part of Fourteenth Amendment due process, *Illinois v Allen*, 397 US 337; 90 S Ct 1057; 25 L Ed 2d 353 (1970)." *People v Montgomery*, 64 Mich App 101, 103;

---

[3] It appears that the trial court misspoke when it used the term "microphone" and instead meant "speaker." There is no indication that the court intended to allow defendant to speak to the courtroom through a microphone, which would have frustrated the very purpose of defendant's removal.

[4] The prosecutor's argument and rebuttal encompassed approximately 20 pages total in the transcript.

235 NW2d 75 (1975). However, through his conduct in the courtroom, a defendant can waive his right to be present. *Id*. Specifically, a defendant can waive his right to be present by "being so disorderly or disruptive that his trial cannot be continued while he is present." *People v Buie* (*On Remand*), 298 Mich App 50, 57; 825 NW2d 361 (2012) (quotation marks and citation omitted).

Defendant in this case interrupted the prosecutor's closing argument 10 times before he was removed from the courtroom. After the third interruption, to keep the proceedings moving, the trial court instructed defendant to save his "objections" for after the prosecutor's arguments. Despite this mandate, defendant continued to interrupt. After the tenth interruption (seventh after being told not to interrupt anymore), the trial court finally removed defendant from the courtroom. Defendant's repeated interruptions can best be characterized as disagreements with the prosecutor's view of the evidence and legal theories. But this is precisely the purpose of closing argument. See *People v Finley*, 161 Mich App 1, 9; 410 NW2d 282 (1987) ("The purpose of closing argument is to allow attorneys to comment on the evidence and to argue their theories of the law to the jury."), aff'd 431 Mich 506 (1988). Consequently, defendant's "objections" had no merit.[5]

Thus, with defendant repeatedly interrupting the prosecutor's argument for unfounded reasons, it is clear that defendant was being disruptive and was subject to being removed. However, the United States Supreme Court has said that a disruptive defendant can be removed only "after he has been warned by the judge that he will be removed if he continues his disruptive behavior." *Allen*, 397 US at 343. There is no indication in the record that the trial court warned defendant that his continued behavior of interrupting the proceeding could result in his removal. Instead, the only warning given was that defendant's allotment of time for his own closing argument could be reduced. Consequently, it appears that the trial court erred—not by removing defendant, but by removing him without first warning him that removal would be a consequence of his continued disruptive actions.

"[T]he test for whether a defendant's absence from a part of his trial requires reversal of his conviction is whether there was any reasonable possibility that defendant was prejudiced by his absence." *People v Armstrong*, 212 Mich App 121, 129; 536 NW2d 789 (1995); see also *People v Morgan*, 400 Mich 527, 535; 255 NW2d 603 (1977) ("[I]t is no longer the law that injury is conclusively presumed from defendant's every absence during the course of a trial."); *Buie*, 298 Mich App at 59. Given the relatively short time defendant was absent, the fact that his absence only pertained to the prosecutor's rebuttal and a small portion the prosecutor's closing argument, and that defendant was able to continue to hear the prosecutor's arguments over a speaker in another room, defendant has failed to show a "reasonable possibility" that he was prejudiced. Defendant argues that he was prejudiced because he was unable to make any further objections or request any curative instructions. However, defendant does not identify any specific, valid objections he would have raised had be remained present. After reviewing the remainder of the prosecutor's closing argument and her rebuttal argument, we likewise see no grounds where an

---

[5] On appeal, defendant does not argue that any of the prosecutor's remarks during closing argument were improper.

objection would have been successful. Thus, any objection would have been futile, and any inability to raise a futile objection cannot constitute prejudice.

Moreover, defendant's contention that he was unable to make any further objections to the prosecutor's argument is not supported by the record. The trial court clearly stated that defendant could—and requested that he do—raise any objections he wanted *at the conclusion of the prosecutor's argument*. It is evident from the record that defendant could still hear everything that was being said while he was removed. Thus, defendant could have raised any objection after arguments, as the trial court requested. Simply put, contrary to defendant's assertion on appeal, he was not prohibited from raising objections to anything that was said while he was absent from the courtroom.

Therefore, although it appears that the trial court plainly erred by not providing a warning to defendant before removing him from the courtroom, reversal is not warranted on this issue because there is no reasonable possibility that he was prejudiced.[6]

Defendant also argues that his removal denied him the right to representation. Defendant's argument has no merit. First, it is undisputed that defendant had waived his right to counsel and instead desired to represent himself. Second, defendant identifies no authority that, merely because he was representing himself, his right to self-representation could not be waived on account of disruptive behavior.

Defendant also claims that the issue was "compounded" because the trial court never expressly designated his standby counsel as the primary counsel after defendant's removal. We agree that, ideally, the trial court should have informed standby counsel that she was no longer "standing by" after defendant's removal. But by definition, being "standby" meant that counsel would take over the representation of defendant if he was unable or unwilling to continue representing himself. See *Black's Law Dictionary* (11th ed), (defining "standby counsel" as "[a] lawyer appointed by the court to be prepared to represent a defendant who waived the right to counsel" and "[a] court-appointed or privately hired lawyer who is prepared to assume representation of a client if the client's primary lawyer withdraws or is fired by the client, of if a pro se defendant's self-representation ends"). Thus, it is not obvious or clear that defendant was without representation after his removal. Although the trial court did not expressly designate counsel as "primary" counsel, there is nothing in the record that shows that counsel did not nonetheless take on that role. The fact that counsel did not raise any objections during the remainder of the prosecutor's closing argument or during the prosecutor's rebuttal argument should not be considered significant where defendant does not identify any specific, valid grounds

---

[6] Our conclusion that reversal is not warranted on this issue would remain unchanged even if the issue was deemed preserved, i.e., that defendant, by his conduct, preserved an objection to his removal from the courtroom. This is because the "reasonable possibility" standard applies regardless of whether an objection is lodged. See generally, *People v Woods*, 172 Mich App 476, 479-480; 432 NW2d 736 (1988) (addressing whether the defendant's absence from trial warranted a new trial without discussion of issue preservation).

for an objection, and none are apparent. Therefore, defendant cannot show under the plain-error standard that he was without representation during closing arguments.[7]

Lastly, defendant argues that the trial court erred by failing to provide a curative instruction to the jury regarding his absence. However, when asked if he was satisfied with the instructions as given, defendant only had a concern regarding the unanimity instruction. Accordingly, any instructions or lack thereof regarding defendant's disruptions and subsequent removal are waived, and waiver extinguishes any error. *People v Carter*, 462 Mich 206, 215-216; 612 NW2d 144 (2000). In any event, defendant's assertion that the trial court provided no instruction on this matter, either immediately after defendant was removed or during final jury instructions, is not supported by the record. One of the very first instructions the trial court provided during the final instructions was that "[a]ny disruptions that we've had during the trial, please do not pay attention to these disruptions and not use it in any way to decide your verdict in this case." Given the lack of other "disruptions" during trial, it is apparent that the trial court was referring to defendant and his earlier removal. Consequently, even if defendant had not waived this issue with respect to jury instructions, and the issue was merely unpreserved, defendant cannot show any plain error.

## III. JURY INSTRUCTIONS

Defendant argues that the trial court erred when it failed to provide the jury with an instruction on a claim-of-right defense and an instruction on adverse possession. We disagree.

"The determination whether a jury instruction is applicable to the facts of a case is reviewed for an abuse of discretion; however, questions of law relative to jury instructions are reviewed de novo." *People v Mikulen*, 324 Mich App 14, 20; 919 NW2d 454 (2018). A court abuses its discretion when it selects an outcome falling outside the range of reasonable and principled outcomes. *People v Dixon-Bey*, 321 Mich App 490, 496; 909 NW2d 458 (2017). Further, whether a defendant was denied the constitutional right to present a defense is reviewed de novo. *People v Kurr*, 253 Mich App 317, 327; 654 NW2d 651 (2002).

Defendant's primary defense at trial was that he thought he was exercising his rights under the doctrine of adverse possession when he recorded quitclaim deeds for properties he did not own and then later attempted to sell those properties. Consequently, defendant requested that the trial court provide the jury with instructions regarding a claim-of-right defense and adverse possession. The trial court denied the requests because it determined that there was insufficient evidence to support the instructions.

"A court must properly instruct the jury so that [the jury] may correctly and intelligently decide the case. The instruction to the jury must include all elements of the crime charged, and

---

[7] Regardless of what standard we apply to his assertion that he was without representation during closing arguments, we nonetheless conclude that reversal is not warranted because he has not affirmatively shown that he was without counsel during that stage of the proceedings. See *Brooks v United States*, 500 F2d 103, 105 (CA 8, 1974) (explaining that "[o]rdinarily, the burden of proof is on an accused to establish that he was denied the right to counsel" at a critical stage) (citation omitted).

must not exclude from jury consideration material issues, defenses or theories if there is evidence to support them." *People v Traver*, 502 Mich 23, 31; 917 NW2d 260 (2018) (quotation marks and citations omitted). Further, the United States Constitution guarantees that "[a] criminal defendant must be provided a meaningful opportunity to present evidence in his or her own defense." *People v Bosca*, 310 Mich App 1, 47; 871 NW2d 307 (2015).

The trial court did not abuse its discretion when it determined that there was insufficient evidence to support instructing the jury on adverse possession and a claim-of-right defense.

"To establish adverse possession, the party claiming it must show 'clear and cogent proof of possession that is actual, visible, open, notorious, exclusive, continuous and uninterrupted for the statutory period of 15 years, hostile and under cover of claim of right.' " *Beach v Lima Twp*, 489 Mich 99, 106; 802 NW2d 1 (2011), quoting *Burns v Foster*, 348 Mich 8, 14; 81 NW2d 386 (1957). In this instance, there was no evidence to show that the requirements of adverse possession had been met. Even assuming that defendant met the "actual, visible, open, notorious, exclusive, [and] continuous" requirements of possession,[8] he did not meet the 15-year requirement. Indeed, as the prosecutor noted in her closing argument, defendant barely had 15 days of "possession," let alone 15 years. Notably, defendant admitted that he did not meet the 15-year requirement as well. Therefore, the trial court did not err by refusing to provide an instruction on adverse possession when it was undisputed that the elements were not satisfied.

Although defendant acknowledged that he did not meet the 15-year statutory period, he claimed that under *his view* of the law, an adverse possessor would have "the right to exercise the powers and privileges of ownership," even before that 15-year period lapsed. Contrary to defendant's assertion, that is not the law of adverse possession. See *Beach*, 489 Mich at 107 (stating that only after the statutory period ends does the adverse possessor acquire "legal title"). Consequently, there is no instruction that could have aided defendant with his theory. At best, defendant could have claimed, which he did, that this was *his* understanding of the law after conducting his own research. But because this defense primarily deals with defendant's personal, subjective beliefs, no jury instruction was needed regarding the actual legal concept of adverse possession. In fact, because the law does *not* support defendant's view, providing the law to the jury may have inured to the benefit of the prosecution. In other words, not having the trial court provide the law of adverse possession to the jurors allowed them to work from a somewhat nebulous concept,[9] which arguably gave them a better chance at believing defendant. Accordingly, because an instruction on adverse possession did not support defendant's theory, he cannot show how he was denied the right to present a defense. Importantly, defendant was able to present his defense that he had no intent to deceive because he *thought* we was acting within his understanding

---

[8] We note that merely recording a quitclaim deed and showing the property to prospective buyers hardly constitutes the type of open, visible, and notorious possession needed. See *Burns*, 348 Mich at 15 ("To make good a claim of title by adverse possession, . . . *the possession must be so open, visible, and notorious as to raise the presumption of notice to the world that the right of the true owner is invaled intentionally*.") (emphasis in original).

[9] Although the trial court did not provide an instruction on adverse possession, a rough definition was mentioned by a witness. Regardless, it was stressed that the court was to be the source of law.

of the law of adverse possession. No instruction on the actual law of adverse possession would have helped him with this defense.

At trial, defendant also requested the following claim-of-right instruction:

> Claim of title or claim of right is essential to adverse possession, but it is not necessary that an adverse claimant should believe in his title, or that he should have any title. He may have no shadow of title and be fully aware of that fact, but he must claim title. He may go into possession without any claim of title, but his possession does not become adverse until he asserts one; and he may assert it by openly exercising acts of ownership, with the intention of holding the property as his own to the exclusion of all others. [Some capitalization altered.]

Preliminarily, the instruction that defendant argues on appeal should have been provided is not the same as the one he actually requested. On appeal, defendant cites M Crim JI 7.5 as the instruction that should have been given, but that instruction deals with a defense to larceny.[10] Therefore, to the extent that defendant contends that the trial court should have provided M Crim JI 7.5, that issue is not preserved. See *People v Sabin* (*On Second Remand*), 242 Mich App 656, 657; 620 NW2d 19 (2000). And because M Crim JI 7.5 addresses larceny-type crimes, the trial court did not plainly err by failing to provide that instruction in this instance. That is because this case dealt with *real* property that cannot be the subject of a larceny. See *People v March*, 499 Mich 389, 401; 886 NW2d 396 (2016).

---

[10] M Crim JI 7.5 provides as follows:

> (1) To be guilty of [larceny / robbery / (state other crime) ] , a person must intend to steal. In this case, there has been some evidence that the defendant took the property because [he / she] claimed the right to do so. If so, the defendant did not intend to steal.

> (2) When does such a claimed right exist? It exists if the defendant took the property honestly believing that it was legally [his / hers] or that [he / she] had a legal right to have it. Two things are important: the defendant's belief must be honest, and [he / she] must claim a legal right to the property.

> (3) You should notice that the test is whether the defendant honestly believed [he / she] had such a right. It does not matter if the defendant was mistaken or should have known otherwise. [It also does not matter if the defendant (used force / trespassed) to get the property or if [he / she] knew that someone else claimed the property.]

> (4) The defendant does not have to prove [he / she] claimed the right to take the property. Instead, the prosecutor must prove beyond a reasonable doubt that the defendant took the property without a good-faith claimed right to do so.

Moreover, the trial court did not err by declining to provide the requested instruction regarding a claim of right. Defendant obtained this "instruction" from *Smith v Feneley*, 240 Mich 439, 441-442; 215 NW 353 (1927), and it pertains to adverse possession. Specifically, the Court was addressing the "claim of right" element of adverse possession, explaining that "[t]he belief or knowledge of the adverse claimant is not as important as his intentions. The intention is the controlling consideration and it is not the knowledge or belief that another has superior title, but the recognition of that title that destroys the adverse character of possession." *Id*. at 441. As already discussed, any instruction on adverse possession was not warranted, so this further layer of law with regard to adverse possession also was not warranted. Notably, nothing prevented defendant from explaining to the jury that this is the law or text he found, which formed the basis for his belief that he had actual title or right to the properties. In other words, the relevance of this passage goes only to defendant's state of mind after reading it. Accordingly, it would not have been proper for the court to instruct the jury on it. Instead, the law, i.e., the text that defendant found and supposedly relied on, was more *evidentiary* in nature as a way to explain his thought process.[11]

Likewise, because the failure to provide this instruction did not affect defendant's ability to present his defense, his constitutional right to present a defense was not violated.

## IV. CLERICAL ERRORS IN JUDGMENTS

Defendant requests that this Court remand to the trial court for correction of clerical errors in the judgments of sentence. Because there are other errors in the judgments as well, we agree that remand for the ministerial task of modifying the judgments is warranted.

In the instant case, defendant initially was sentenced under two judgments of sentence that were entered on March 6, 2019, one for LC 15-007481-01-FH and another for LC 15-008119-01-FH. Both judgments were later amended on August 31, 2020. All four judgments state, "The defendant was found guilty on 03/23/2016." These dates of conviction are incorrect. Those dates represent the dates defendant was convicted at his *first* trial; but after this Court's remand and a new trial was held, defendant was convicted on February 2, 2019.

Additional, more substantial clerical errors are also apparent in the judgments of sentence. In LC 15-007481-01-FH, defendant was convicted of one count of conducting a criminal enterprise and one count of false pretenses. The amended judgment of sentence specifies that defendant was convicted of these counts, but in the sentence portion, it only lists the sentence for the conducting-a-criminal-enterprise conviction. Defendant's sentence for the false-pretenses conviction is not listed and should be reflected on this judgment.

---

[11] Moreover, defendant's interpretation at trial of this excerpt from *Smith* is incorrect. This provision does not mean that an adverse possessor *actually has* all rights and privileges of ownership before the expiration of the 15-year period. Instead, an adverse possessor must act *as if* he has such rights, but the possessor has no actual title or rights before the expiration of that 15-year period.

Furthermore, the amended judgment of sentence for LC 15-008119-01-FH states that defendant was found guilty of two counts of false pretenses, which are listed as Counts 2 and 4. But under the sentencing portion, the counts are listed as Counts 3 and 4. They properly should be listed as Counts 3 and 4 because Counts 1 and 2 were captured on the other judgment.[12]

Therefore, we remand for the ministerial task of correcting the amended judgments of sentence as follows:

LC No. 15-007481-01-FH

- under "THE COURT FINDS" section, the date of conviction should be listed as 02/07/2019

- under the sentencing section, the sentencing for Count 2 that had been omitted should be added

LC No. 15-008119-01-FH

- under "THE COURT FINDS" section, the date of conviction should be listed as 02/07/2019

- under "THE COURT FINDS" section, the counts should be listed as Counts 3 and 4 to match how they are represented in the sentencing section

## V. DEFENDANT'S STANDARD 4 BRIEF

Defendant raises several additional issues in his Standard 4 brief on appeal,[13] but as discussed below, none have merit.

## A. DUE PROCESS

Defendant argues that his right to due process was violated because the information failed to inform him which charged counts were associated with which lower court file, and because the information alleged that Redford Township was the only victim. We disagree. This Court reviews constitutional issues de novo. *People v Benton*, 294 Mich App 191, 203; 817 NW2d 599 (2011).

After this Court's remand and before defendant's retrial commenced, a fifth amended information was issued, which listed only a single case number, "8215007481." And under "Complainant or Victim," the information only listed "TOWNSHIP OF REDFORD."

"The Due Process Clause of the Fourteenth Amendment mandates that a state's method for charging a crime give a defendant fair notice of the charge against the defendant, to permit the defendant to adequately prepare a defense." *People v Chapo*, 283 Mich App 360, 364; 770 NW2d

---

[12] Indeed, the initial March 6, 2019 judgment labeled them as Counts 3 and 4.

[13] A pro se brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4.

68 (2009). "The purpose of an information in a criminal case is to inform the defendant of the charge made against him." *People v Carriger*, 37 Mich App 605, 609; 195 NW2d 25 (1972) (quotation marks and citation omitted). An information is to contain the following: (1) the "nature of the offense stated in language which will fairly apprise the accused and the court of the offense charged"; (2) "[t]he time of the offense as near as may be"; and (3) "[t]hat the offense was committed in the county or within the jurisdiction of the court." MCL 767.45(1)(a)-(c). Further, under MCL 767.76 and MCR 6.112(H), a court may amend an information at any time, which can be before, during, or after trial. See *People v McGee*, 258 Mich App 683, 687; 672 NW2d 191 (2003). But any "amendment must not cause unacceptable prejudice to the defendant through 'unfair surprise, inadequate notice, or insufficient opportunity to defend.' " *Id*. at 688, quoting *People v Hunt*, 442 Mich 359, 364; 501 NW2d 151 (1993); see also *Chapo*, 283 Mich App at 364 ("Prejudice is essential to any claim of inadequate notice.").

We find no error requiring reversal on account of the information failing to state which count was associated with which lower court file. For one thing, the information *does* specify—it clearly provides that all four counts are associated with case "8215007481," which presumably relates to LC 15-007481-01-FH. Accordingly, the premise for defendant's argument that he was never informed which counts were associated with which lower court files is not supported by the record. Plainly, defendant was notified that all the counts were associated with LC 15-007481-01-FH. The accuracy of this is another matter, but defendant cites no authority for the proposition that a (presumed) error in the listing of a lower-case number on an information is a ground for reversal. Indeed, it is not clear how any such error could be deemed prejudicial.[14] Regardless of what the court number was supposed to be, the information provided defendant with the required notice on the four separate counts. Therefore, his argument related to a purported lack of a lower court file number (or an incorrect lower court file number) does not warrant reversal.

The other aspect of defendant's argument is that the information fails to identify anyone other than Redford Township as a victim. Notably, under MCL 767.45(1), naming a victim is not required. All that is required is to adequately describe the nature of the charged offense. And in the information, it mentioned the specific addresses from the real estate transactions that were associated with each incident of false pretenses. Accordingly, despite the fifth amended information not listing the names of the individuals who had been defrauded on these transactions, the information supplied sufficient information, by virtue of the inclusion of the addresses for the various property transactions, for defendant to know which conduct was at issue. Moreover, contrary to defendant's assertion, the prosecutor did amend the information to add these individual victim names. The fact that this sixth amended information was created after trial is of no moment because that is expressly permitted under the law, as long as there is no prejudice. *McGee*, 258 Mich App at 687-688. And defendant cannot show any prejudice because in his first trial, there was evidence presented that all of these named victims had been involved with defendant in the various property transactions. Thus, the addition of the names in the sixth amended information does not and cannot constitute unfair surprise.

---

[14] It was undisputed that while there were two different case files originally, the cases were consolidated for trial.

In sum, defendant's complaints about the information are unwarranted. He has failed to show how he was prejudiced by any perceived errors. There is no question that he had notice of the charges he was facing at trial. Aside from the fifth (and sixth) amended information clearly specifying the charges he was facing, this Court's prior decision specified which four counts were subject to retrial. *Hardrick*, unpub op at 1, 9.[15] It was immaterial which lower court files these counts were tied to.

## B. ADDITION OF COUNTS

Defendant argues that reversal is required because he was tried on charges that the prosecution had added after this Court's remand that were not the subject of a preliminary examination. We disagree with defendant's positions.

At the outset, defendant's position is multifaceted and somewhat hard to follow. He acknowledges that this Court remanded for a new trial on one count of conducting a criminal enterprise and three counts of false pretenses. Although a new trial was held on these four charges, he maintains that this was improper. Most of his argument stems from the fact that in the third amended information, which was the latest information for defendant's original trial, under the conducting-a-criminal-enterprise charge, it alleged that defendant knowingly conducted or participated "in the affairs of the enterprise directly or indirectly through a pattern of racketeering activity, consisting of two or more" incidents. The information then listed 13 incidents of racketeering. Of those 13 incidents, 10 were for the forgery of a document affecting real property and three were for false pretenses. Notably, the three incidents involving false pretenses were for transactions involving properties located at 18300 Glastonbury, 12661 Fordline, and 10065 West Outer Drive.[16]

On remand, new information documents were filed. Because this Court determined that defendant could not be convicted of forgery of documents affecting real property, *Hardrick* unpub op at 5, the fifth amended information removed references to those crimes and spelled out that the racketeering activities consisted of false pretenses for the properties located at 13591 Lenore, 18300 Glastonbury, 3290 Sherbourne, 12661 Fordline, and 10065 West Outer Drive. Thus, instead of three incidents of false pretenses supporting the charge of conducting a criminal enterprise, there were now five.

Consequently, defendant's characterization that the prosecutor "added" charges is unfounded. This Court ordered that defendant was subject to retrial on one count of conducting a

---

[15] This Court stated that defendant was subject to retrial on "the charges of conducting a criminal enterprise and using false pretenses to obtain money in an amount of $1,000 or more, but less than $20,000." *Hardrick*, unpub op at 9. But earlier in its opinion, this Court specified that the conducting-a-criminal-enterprise count was from LC No. 15-007481-01-FH. *Id*. at 1. The opinion further reflected that one count of false pretenses came from LC No. 15-007481-01-FH and two counts of false pretenses came from LC No. 15-008119-01-FH. *Id*.

[16] Separately, the third amended information listed three individual counts of false pretenses (Counts 26, 30, and 31) for the Lenore, Glastonbury, and Sherbourne properties.

criminal enterprise and three counts of false pretenses, and that is what happened. The prosecutor did not "add" any charges at the retrial. At the prior trial, defendant was charged with, *inter alia*, one count of conducting a criminal enterprise and three counts of false pretenses, with the three false-pretenses counts relating to 13591 Lenore, 18300 Glastonbury, and 3290 Sherbourne. Those same charges were at issue in the second trial.

The only difference was that after this Court's remand for a new trial, the prosecutor listed *five* incidents of false pretenses to support the conducting-a-criminal-enterprise allegation instead of the *three* that were alleged in the third amended information. The addition of these other incidents of racketeering did not result in a "new" charge or offense being added. In both the third amended information (subject of first trial) and the fifth amended information (subject of second trial), there was a count of conducting a criminal enterprise.

Also, to the extent that defendant focuses on the addition of these two incidents of false pretenses to support the charge of conducting a criminal enterprise in the fifth amended information, he cannot show any prejudice. Notably, the two "extra" instances of false pretenses in support of that charge were alleged, as independent crimes, in the third amended information. Simply put, although the prosecutor alleged that there were more instances of racketeering to support the crime of conducting a criminal enterprise, these additional instances *already had been alleged as separate crimes in the original trial*. Therefore, defendant was not prejudiced. The third amended information put him on notice that he had to defend against the allegations that he had engaged in false pretenses related to the Glastonbury, Fordline, Outer Drive, Lenore, and Sherbourne transactions. Thus, there can be no prejudice when the fifth amended information also alleged that defendant had engaged in false pretenses related to those very same properties.

In sum, defendant has failed to show how there was any "unfair[] surprise or prejudice" with how he was charged in the fifth (or sixth) amended information. MCR 6.112(H).

Defendant's contention that he was denied a preliminary examination with respect to the "new" racketeering charge also is unfounded. As already explained, there was no "new" racketeering charge. Thus, because the racketeering charge was the subject of the September 8, 2015 preliminary examination, which was held before the first trial, defendant cannot show any error or prejudice. See *People v Sims*, 257 Mich 478, 482; 241 NW 247 (1932) ("There being no new or different charge introduced by amendment, there is no occasion for a new examination or a rearraignment.").

## C. SUFFICIENCY OF THE EVIDENCE

Defendant argues that there was insufficient evidence to support his conviction of conducting a criminal enterprise. We disagree.

A challenge to the sufficiency of the evidence is reviewed de novo by viewing the evidence in a light most favorable to the prosecution to "determine if any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Cline*, 276 Mich App 634, 642; 741 NW2d 563 (2007) (quotation marks and citation omitted). "All conflicts with regard to the evidence must be resolved in favor of the prosecution. Circumstantial evidence and reasonable inferences drawn from it may be sufficient to prove the

-14-

elements of the crime." *People v Wilkens*, 267 Mich App 728, 738; 705 NW2d 728 (2005) (citation omitted).

MCL 750.159i(1) provides that "[a] person employed by, or associated with, an enterprise shall not knowingly conduct or participate in the affairs of the enterprise directly or indirectly through a pattern of racketeering activity." Racketeering is defined, in relevant part, as "committing, attempting to commit, [or] conspiring to commit . . . an offense for financial gain" involving false pretenses. MCL 750.159g(w). And a "pattern of racketeering" is defined, in relevant part, as "not less than 2 incidents of racketeering," MCL 750.159f(c), where "racketeering" includes incidents of obtaining money or property through false pretenses, MCL 750.159g(w).

Notably, defendant does not actually aver that there was insufficient evidence introduced at trial to support his conviction. Instead, he first argues that his conviction should be overturned because of what was stated in the original information that was filed in this case. Specifically, he avers that because the initial information only listed a single instance of false pretenses as a predicate offense for the conducting-a-criminal-enterprise charge, the offense cannot be established because it requires two or more instances.[17] But he does not explain (1) how an information is relevant to whether there was sufficient evidence presented at trial to support a conviction and (2) assuming information documents were relevant, why the *initial* information would be of significance in any event, when the *fifth* amended information was the most recent one before his retrial. And assuming the information from the first trial was relevant, the third amended information, which was the effective one at the time of defendant's first trial, listed among the predicate offenses under the conducting-a-criminal-enterprise count instances of false pretenses related to 18300 Glastonbury, 12661 Fordline, and 10065 West Outer Drive. Thus, with the fifth amended information listing five instances of false pretenses, the pertinent information documents at both trials each listed "2 or more" instances of false pretenses. MCL 750.159f(c). Accordingly, defendant's position that there was only a single predicate instance of false pretenses is without merit.

For his second argument, defendant asserts that there was insufficient evidence that Redford Township was a victim of the charged crimes. Again, defendant focuses on the information, where the fifth amended information only listed Redford Township as the "complainant or victim." He does not dispute that there was evidence presented showing that several individuals had given him money on account of his representations that he owned the properties in question. Moreover, assuming that this type of "victim" designation on an information is controlling,[18] defendant ignores that a sixth amended information listed the names of individual victims. Thus, the premise for this argument is wanting.

---

[17] Along with this one instance of false pretenses, the information also listed 10 instances of forgery of a document affecting real property as the predicate offenses for the conducting-a-criminal-enterprise count.

[18] Defendant cites no authority showing that such a designation is controlling in any manner.

Defendant next argues that there was insufficient evidence to support his conviction because he actually held a legal claim to the properties. However defendant wishes to characterize his "claim," there was no evidence that he possessed legal title to the properties. On the contrary, there was evidence that at the time defendant "sold" the properties in question, other people or banks owned the properties—not him. Defendant's reliance on his various deeds is grossly misplaced. There is nothing magical about recording a document with the register of deeds.[19] His recording of quitclaim deeds that purported to give his companies legal title merely transferred whatever interest he had in the properties (which was none) to those entities. There is no question that defendant held no valid property interests in these properties[20]; thus, the quitclaim deeds transferred nothing. This is why defendant's forgery convictions were overturned, but the false-pretenses convictions were not—"the deeds only purported to convey whatever interest defendant or his company possessed, even if neither possessed any legal interest." *Hardrick*, unpub op at 5. Defendant's reliance on the doctrine of adverse possession fails for many reasons, but the primary one is that the 15-year statutory period had not elapsed.[21] Indeed, defendant freely admitted this at trial. Thus, as explained in Part III, contrary to defendant's assertions, until that 15-year period lapses, defendant holds no title.

Despite not qualifying to take title under the doctrine of adverse possession, defendant nonetheless would have to be acquitted if he held an honest belief that he was the owner of the properties because false pretenses requires, among other things, that "at the time the pretense was used[,] the defendant must have known it to be false." *People v Lueth*, 253 Mich App 670, 680; 660 NW2d 322 (2002). This was a determination for the jury, and the jury found defendant not credible in this regard. As this Court stated previously, "[a]though defendant claimed he believed he was the owner [on account of his understanding of the law], the jury could have reasonably found that defendant knew the representations to be false." *Hardrick*, unpub op at 5. Thus, there was sufficient evidence to support defendant's convictions, which all involved false pretenses.

In his fourth argument, defendant contends that the trial court entered a conviction for conducting a criminal enterprise "based on one count of false pretenses." This is not true. First, the judgment of sentence does not indicate what the underlying conduct was in relation to this

---

[19] Indeed, it was presented at trial that the register of deeds has no power or authority to look into the validity of any document before being recorded. As an example, an employee from the Wayne County Mortgage and Deed Fraud Unit explained that as long as the document is filled out, it will be accepted for recording, even if it reflects a conveyance from "Bugs Bunny" to "Elmer Fudd."

[20] Although defendant at trial and on appeal cites this Court's prior opinion for its pronouncement that the forgery charges were not proper, defendant fails to also acknowledged that the lack of "forgery" does not make his deeds "legitimate" *in the sense that they conveyed actual title*. See *Hardrick*, unpub op at 4 ("The evidence presented at trial, however, showed that defendant was not the owner of the properties.").

[21] There should be little question that whatever "possession" defendant had was minimal and fleeting and certainly not open, visible, or notorious, which are required to sustain a claim of adverse possession. See Note 6 of this opinion.

-16-

conviction. Defendant apparently is conflating the fact that in that judgment of sentence, he also was convicted of one count of false pretenses. But that false-pretenses conviction is wholly independent from the conviction for conducting a criminal enterprise. As had been discussed ad nauseum at the trial court, defendant was to be tried on four separate and distinct counts: one count of conducting a criminal enterprise and three counts of false pretenses.[22] While the conducting-a-criminal-enterprise count involved other underlying conduct, that underlying conduct did not have to be charged as individual counts. Therefore, defendant's assertion that he was convicted on the basis on a *single* underlying act is not supported by the record. Indeed, the trial court instructed the jury that there were *multiple* alleged incidents of racketeering as the basis for this particular charge. As such, there is no basis for defendant's contention that his conviction was premised on a single underlying act. As previously described, there was evidence presented that defendant engaged in false pretenses multiple times. Because defendant admitted to creating and recording the deeds and selling the various properties, the only question the jury had to resolve was whether defendant's assertions to the purchasers that he was the "owner" was done with the knowledge that he was not the true owner. See *Lueth*, 253 Mich App at 680. And in this instance, the jury did not accept his version and instead concluded that defendant knew that he did not hold title.

Because none of defendant's arguments has any merit, he cannot prevail on the issue of there being insufficient evidence to support his conviction for conducting a criminal enterprise.

## D. RIGHT OF CONFRONTATION

Defendant argues that he was denied the right to confront his accuser, Redford Township. We disagree.

"The Confrontation Clause of the United States Constitution provides that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . .' " *People v Fackelman*, 489 Mich 515, 524-525; 802 NW2d 552 (2011), quoting US Const, Am VI. "The Confrontation Clause is primarily a functional right in which the right to confront and cross-examine witnesses is aimed at truth-seeking and promoting reliability in criminal trials." *People v Nunley*, 491 Mich 686, 697; 821 NW2d 642 (2012) (quotation marks and citation omitted). The right is violated when out-of-court testimonial statements are admitted in evidence, unless the declarant appeared at trial or the defendant had a previous opportunity to cross-examine the declarant. *Id*. at 698.

Defendant does not cite any evidence that was admitted contrary to this constitutional mandate. Put another way, defendant has not identified any testimonial statements that were admitted into evidence at trial where the declarant was not subject to cross-examination. Accordingly, he has failed to show how his right of confrontation was violated.

---

[22] The trial court stressed to the jury that the four charged crimes are indeed separate charges and each one would be reflected on its own verdict form.

Instead, as with most of his issues, defendant focuses on the information. In the fifth amended information, it listed the "Complainant or Victim" as Redford Township.[23] Because of this designation, defendant maintains that he had the right to cross-examine Redford Township, seemingly irrespective of the evidence introduced. Defendant's view seems to take a simplistic view of the Confrontation Clause, such that any "victim" must be subject to cross-examination.[24] As already described, this is not what the Confrontation Clause requires. As long as there were no testimonial statements attributable to "Redford Township" that were admitted into evidence, the Confrontation Clause is not implicated. See *id*. And here, no such statements were introduced into evidence.

## E. DOUBLE JEOPARDY

Defendant argues that his convictions for conducting a criminal enterprise and false pretenses violate double jeopardy because the allegations of false pretenses were contained within the conducting-a-criminal-enterprise crime. We disagree.

An issue is preserved if it is raised in and decided by the trial court. *Cameron*, 291 Mich App at 617. Defendant never asserted that he was being tried or punished for the same crimes (false pretenses) twice in violation of double jeopardy. Accordingly, that portion of defendant's argument is not preserved. Defendant, however, did raise the issue of relitigating the legality of his deeds. Therefore, that argument is preserved. But to the extent that this issue also involves prosecutorial misconduct during rebuttal, defendant raised no objections; therefore, that aspect is not preserved.[25]

"The Double Jeopardy Clause, US Const, Am V, protects against '(1) multiple *prosecutions* for the same offense after acquittal or conviction; and (2) multiple *punishments* for the same offense.' " *People v Duenaz*, 306 Mich App 85, 105; 854 NW2d 531 (2014) (citation omitted; emphasis in original); see also Const 1963, art 1, § 15. However, "when the Legislature has clearly expressed the intent for multiple punishments, the prohibition against double jeopardy is not violated." *Duenaz*, 306 Mich App at 106. In other words, "the Double Jeopardy Clause acts as a restraint on the prosecutor and the Courts, not the Legislature." *People v Mitchell*, 456 Mich 693, 695; 575 NW2d 283 (1998). Thus, when the issue is one of multiple punishments, the proper analysis is to determine whether there is a clear indication of legislative intent to impose multiple punishments for the same offense, and if so, then there is no double-jeopardy violation. *Id*. at 695-696.

---

[23] As previously discussed, a sixth amended information added the names of the individual victims as well.

[24] This position is untenable because under defendant's theory, no murder could successfully be prosecuted because the victim would not be able to testify at trial.

[25] As noted earlier, although defendant was removed from the courtroom during the prosecutor's rebuttal argument, he was permitted to listen to the arguments over a speaker and the trial court had previously instructed him to raise any objections to any comments at the conclusion of the arguments. He did not do so.

In this instance, defendant was convicted of one count of conducting a criminal enterprise and three counts of false pretenses. As previously noted, in the fifth amended information, the predicate offenses for the conducting-a-criminal-enterprise charge were five instances of false pretenses. The fact that defendant was punished for conducting a criminal enterprise, when the predicate offenses were obtaining money or property though false pretenses, does not preclude defendant from also being punished separately for any predicate instance of false pretenses. That is because MCL 750.159j(13) states, "Criminal penalties under this section are not mutually exclusive and do not preclude the application of any other criminal or civil remedy under this section or any other provisions of law." Therefore, because the Legislature has expressly allowed for multiple punishments related to conducting a criminal enterprise, double jeopardy is not violated.

Although not truly a double-jeopardy issue, defendant also argues that because of this Court's prior decision, the issue whether his deeds were "legitimate" could not be relitigated at his new trial. Because he is arguing that the issue of the legitimacy of the deeds could not be relitigated, and because he was not retried on any forgery-related charges, this issue seems to fall under the doctrine of collateral estoppel. "Collateral estoppel precludes relitigation of an issue in a subsequent, different cause of action between the same parties where the prior proceeding culminated in a valid, final judgment and the issue was (1) actually litigated, and (2) necessarily determined." *People v Gates*, 434 Mich 146, 154; 452 NW2d 627 (1990). The issue regarding the "legality" of the deeds was actually determined in the prior appeal. Specifically, this Court held that because quitclaim deeds merely convey a grantor's complete interest or claim in real property to another, without any warranty that title is valid, the deeds themselves could not be "falsely made," which negated any claim of forgery and uttering and publishing a document. *Hardrick*, unpub op at 5-6.

But on retrial, none of defendant's charges required a showing that the deeds were "falsely made." Therefore, it is not clear how double jeopardy or collateral estoppel were implicated. Defendant seems to take issue with how the prosecutor argued that the deeds were not "legitimate." Hence, the issue defendant presents appears to be one of prosecutorial misconduct related to the prosecutor's arguments. The test is whether a defendant was denied a fair and impartial trial due to the actions of the prosecutor. *People v Rodriguez*, 251 Mich App 10, 30; 650 NW2d 96 (2002). A prosecutor's comments are to "be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial." *Id*.

Defendant cites the following statements from the prosecutor's rebuttal argument:

> One of the things that the Defendant claims is that he keeps saying his deeds are legitimate and the Court of Appeals has overturned it. And you heard the Judge instruct him over and over and over that you've heard no evidence of that. Yet he continues to try and ply that. There has been no evidence that his quitclaim deeds are legitimate in any form or fashion other than the fact that he continues to say that, just like he continues to say I'm the owner, I'm the owner.

But this comment was in response to defendant's argument:

> I have a legitimate quitclaim deed to the property no matter how I obtained it. It has already been ruled by the Court of Appeals that what I did was legit. This is just a different scenario of how I obtained the properties, how I'm being charged for obtaining the properties and selling them. So, just, you know, take that into consideration or not.

When viewed in context, although the prosecutor said that there was no evidence to show that the deeds were "legitimate," it is apparent that the prosecutor was not contending that the deeds were forged, but rather that they were ineffective to provide defendant with a valid legal interest in the properties. Arguably, the prosecutor could have used more precise words, but her use of "legitimate" mirrored defendant's use of "legitimate" and "legit." Importantly, defendant was not merely arguing that the deeds were not forged instruments—he was instead contending that the deeds established that he had some type of valid property interest. It was *this* aspect that the prosecutor was refuting. Because defendant's position was wrong as a matter of law,[26] and the prosecutor was trying to refute it, defendant cannot show how this comment denied him a fair trial. Significantly, the trial court instructed the jury on how quitclaim deeds do not guarantee anything about title and instead merely transfer "whatever interest the grantor may have in the property to another."

As a result, because none of defendant's arguments for this issue has any merit, he is not entitled to any relief.

## VI. CONCLUSION

We affirm defendant's convictions, but we remand to the trial court for the ministerial task of amending the judgments of sentence to correct clerical errors. The judgment in LC No. 15-00748-01-FH is to reflect February 7, 2019, as the date of conviction and is to show the sentence for Count 2, which was omitted. The judgment in LC No. 15-008119-01-FH is to reflect the February 7, 2019 conviction date, and is to show the two counts of false pretenses as Counts 3 and 4. We do not retain jurisdiction.

/s/ Amy Ronayne Krause
/s/ Michael J. Riordan
/s/ Colleen A. O'Brien

---

[26] The existence of a quitclaim deed does not necessarily equate to the existence of a property interest. As this Court stated in its prior opinion, "A quitclaim deed is defined as '[a] deed that conveys a grantor's complete interest or claim in certain real property but that nether warrants nor professes that the title is valid.' Thus, the deeds only purported to convey *whatever interest defendant or his company possessed, even if neither possessed any legal interest*." *Hardrick*, unpub op at 5 (emphasis added; citation omitted).