SMITH *v.* FENELEY.

1. ADVERSE POSSESSION — CLAIM OF TITLE ESSENTIAL BUT NOT NECESSARY THAT CLAIMANT HAVE ANY TITLE.

Claim of title or claim of right is essential to adverse possession, but it is not necessary that an adverse claimant should believe in his title, or that he should have any title.

2. SAME—MAY BE ASSERTED BY ACTS OF OWNERSHIP.

If one goes into possession without any claim of title, his possession does not become adverse until he asserts one, and he may assert it by openly exercising acts of ownership, with the intention of holding the property as his own to the exclusion of all others.

3. SAME—ACTS OF OWNERSHIP FOR STATUTORY PERIOD SUFFICIENT.

Where one lived upon property for the statutory period, erected buildings thereon, paid the taxes, cleared and cultivated the land, sold some portions of it, and cut and marketed timber, such acts and conduct clearly indicated a claim of ownership and an intention to hold it as such against all others, constituting adverse possession.

4. SAME—SECURING QUITCLAIM DEED DOES NOT NECESSARILY INTERRUPT RUNNING OF STATUTE—RECOGNIZING SUPERIOR TITLE IN ANOTHER FATAL.

Where an adverse claimant secured a quitclaim deed from the owner of record for the purpose of quieting her title, to prevent litigation, or to make her title a record title, the securing of said deed did not interrupt the running of the statute; there being no recognition of superior title in the owner.

Appeal from Mackinac; Shepherd (Frank), J. Submitted June 14, 1927. (Docket No. 32.) Decided October 3, 1927.

Bill by Mamie Smith against George A. Feneley to quiet title to land. From a decree for plaintiff, defendant appeals. Affirmed.

[1]Adverse Possession, 2 C. J. § 211; [2]Id., 2 C. J. §§ 214, 216, 217; [3]Id., 2 C. J. § 216; 1 R. C. L. 697, 699; 1 R. C. L. Supp. 235; [4]Id., 2 C. J. § 153.

*Prentiss M. Brown,* for plaintiff.

*A. L. Sayles* and *Warner & Sullivan,* for defendant.

McDonald, J.     This is an appeal from a decree of the circuit court of Mackinac county, Michigan, quieting the plaintiff's title to certain land in that county. The land involved consists of 47 acres in the township of Portage, Mackinac county, Michigan.     The plaintiff and her husband went into possession of this land under certain tax deeds which they acquired in 1901 and 1902.     The necessary statutory notice was not served upon all of the owners.     The husband, Walter Smith, died.     The plaintiff and those in privity of title with her have remained in possession from 1907, until the time of this suit in 1926.     In June, 1912, she obtained a quitclaim deed from Mr. Buell, one of the owners of the record title.     In 1907, Mr. Buell and wife gave a power of attorney to F. B. Meyers authorizing him to sell and convey all land owned by him in Michigan.     Under authority of this power of attorney Meyers deeded the land in question to the defendant, George A. Feneley, on the 24th of September, 1925, for a consideration of $150.     It is by virtue of this deed that the defendant claims title. On the hearing the circuit judge found that the plaintiff had acquired title by adverse possession and entered a decree granting the relief asked for in her bill.     The defendant has appealed.

If the plaintiff has any title it was derived from adverse possession for the statutory period.     It is undisputed that she was in occupancy of the land for more than 15 years prior to the commencement of this suit; but the defendant contends that her possession was not adverse during all of that period; that she was not in adverse possession prior to her deed from Mr. Buell in 1912; that, if she had been, its continuity was interrupted by thus dealing with the owner and

accepting a deed from him in recognition of his superior title. It is argued by the defendant that there was no adverse holding before the plaintiff got her deed from Buell in 1912, because she did not "believe in her title;" and that,

"If one occupies property with the idea in mind that somebody else has superior title thereto, that such possession is not adverse and will not ripen into ownership, however long continued."

Apparently counsel for the defendant has been misled by the language of some of the reported cases, and the sometimes inaccurate use of the terms, "claim of title" and "claim of rights." In *Campau* v. *Lafferty,* 43 Mich. 429, it is stated, quoting from the syllabus:

"An adverse holding cannot exist if the holder does not believe in his title."

The syllabus does not in this respect correctly interpret the holding of the court, though some language is used in the opinion which would seem to justify it. It is apparent, however, that the court did not intend to so hold, for in connection with the statement, and a part of it, it was said:

"There is no doubt a possession may be maintained long enough by an undisturbed and defiant trespasser to bar an ejectment."

The belief or knowledge of the adverse claimant is not as important as his intentions. The intention is the controlling consideration, and it is not the knowledge or belief that another has a superior title, but the recognition of that title that destroys the adverse character of possession. Claim of title or claim of right is essential to adverse possession, but it is not necessary that an adverse claimant should believe in his title, or that he should have any title. He may have no shadow of title and be fully aware of that fact, but he must claim title. He may go into

possession without any claim of title, but his possession does not become adverse until he asserts one; and he may assert it by openly exercising acts of ownership, with the intention of holding the property as his own to the exclusion of all others.

"Claim of title is where one enters and occupies land, with the intent to hold it as his own, against the world irrespective of any shadow or color or right or title." 2 C. J. p. 168, § 324.

"It is not necessary, however, that the party in possession should have expressly declared his intention to hold the property as his own, nor need his claim thereto be a rightful one. That his acts and conduct clearly indicate a claim of ownership is enough." 1 R. C. L. p. 706, § 18.

In this case the plaintiff's acts and conduct clearly indicate a claim of ownership and an intention to hold it as such against all others. She lived upon the property, erected the buildings, paid the taxes, cleared and cultivated the land, sold some portions of it and cut and marketed timber. The evidence clearly establishes all of the essential elements of adverse possession for the statutory period, unless its continuity was broken by purchasing the title of Mr. Buell in 1912.

It is the contention of the defendant that the purchase of this interest from an owner of the record title interrupted the running of the statute. Whether the defendant is right in this contention depends upon the facts and circumstances of the purchase, and particularly the purpose of the plaintiff in securing the conveyance. If her purpose was to quiet her title or to prevent litigation or to make her title a record title, her act in securing the quitclaim deed was not a recognition of superior title in the owner and would not interrupt the running of the statute. 2 C. J. p. 106, § 153; *Munroe* v. *Railway Co.,* 226 Mich. 158.

The Smiths went into possession of this land in

1907 under certain tax deeds which gave them color of title. Mrs. Smith says that they supposed they owned it and intended to occupy it as long as they lived. About two years after they had gone into possession, she says:

"There was general talk about going to take it away from us. * * * There was some Indians there (it had been an Indian reservation) and they kept telling us that it was these Indians that was going to put us off."

Because of these rumors, they began to investigate, and were told that Buell owned the property. In 1909, Buell appeared in the neighborhood, talked with the neighbors, told one of them that it was not worth while to attempt to put the Smiths off and went away without talking with them or making any demand for possession. Three years later the Smiths located Buell, who was not a resident of this State, and secured from him a quitclaim deed, for which they paid $100. Buell was the owner of the record title to one-half of the property, but previous to his conveyance to the Smiths he had given to Mr. Meyers an irrevocable power of attorney to sell and convey this land. The Smiths acquired nothing by their deed. They got no possession from Buell. They were already in adverse possession under tax deeds. In the cross-examination of the plaintiff there is some testimony tending to support the claim of the defendant that in accepting this conveyance she recognized the superior title of Mr. Buell, but she also testified that she always claimed to own the property and that she bought the Buell interest to quiet her title. We think it a fair inference from all of her testimony that there was no recognition of a superior title in Buell. In *Ripley* v. *Miller*, 165 Mich. 47 (Ann. Cas. 1912C, 952), it was said, quoting from the syllabus:

"The vendee in the land contract in actual possession

under a tax deed from the State was entitled to pur-
chase the outstanding claim of the vendor without im-
pairing his own rights or acknowledging the validity
of the title bought."

In our view of the facts and circumstances attend-
ing the securing of the conveyance from Mr. Buell,
it did not operate to stop the running of the statute.

There are no other questions which require dis-
cussion.

The decree of the circuit court is affirmed, with costs
to the plaintiff.

SHARPE, C. J., and BIRD, SNOW, STEERE, FELLOWS,
WIEST, and CLARK, JJ., concurred.