# STATE OF MICHIGAN

# COURT OF APPEALS

---

ALICIA S. ROWE,

        Plaintiff/Counter-Defendant-
        Appellant,

v

PATRICK AND CARRIE, LLC,

        Defendant/Counter-Plaintiff-
        Appellee.

UNPUBLISHED
August 17, 2017

No. 332309
Wayne Circuit Court
LC No. 14-014512-CH

---

Before: SAAD, P.J., and SERVITTO and GADOLA, JJ.

PER CURIAM.

In this action regarding a dispute of the boundary between two adjacent lots of land, plaintiff appeals the trial court's order that granted defendant's motion for summary disposition brought under MCR 2.116(C)(10). For the reasons provided below, we affirm.

## I. BASIC FACTS

Plaintiff and defendant own adjacent properties located in Plymouth, Michigan. Plaintiff's property shares its southern border with the northern border of defendant's property. Plaintiff owns the northern property located at 218 South Harvey Street, which is used as a four-unit residential rental property ("the Harvey property"). Plaintiff acquired the Harvey property in 2013 from her father, John Richard Rowe ("Rowe"), who had owned the property since 1975. Defendant[1] owns the southern property located at 908 Penniman Avenue, on the corner of Penniman Avenue and South Harvey Street ("the Penniman property"). Defendant purchased the Penniman property in 2010 from Dr. Gary Krueger, who had owned the property since the mid-1970s. Defendant uses the Penniman property as a professional office building.

During the first year of his ownership of the Penniman property, Dr. Krueger, defendant's predecessor in interest, removed a garage located on the northwest portion of his property, which

---

[1] The members of defendant Patrick and Carrie, LLC, include Patrick Wong and Carrie Bake-Wong. The testimony attributed to defendant is from the deposition of Patrick Wong.

created a large open space where the parties' parking lots now meet. Rowe, plaintiff's predecessor in interest, asserts that since 1975, he and his tenants have crossed over the open area of the Penniman property's parking lot for egress to Harvey Street. Rowe believed that he and his tenants had Dr. Krueger's permission to use the Penniman property's parking lot in this manner. After plaintiff acquired the Harvey property in 2013, her tenants continued to cross over the Penniman property's parking lot to access Harvey Street. Plaintiff believed that her tenants had been told they could access Harvey Street in this manner and that the use of the Penniman property for egress from her property to Harvey Street was "permissible and allowed."

In 2014, defendant was planning a landscaping project that included the construction of a wall or berm along the at-issue property line and had a survey performed based on the property's legal description. Sometime thereafter, defendant placed cement parking blocks near the surveyed boundary line, which, according to plaintiff, "significantly decreased" the space where her tenants parked and prevented them from using defendant's parking lot to access Harvey Street as they had become accustomed to doing.

Plaintiff asserts that the surveyed property line does not reflect the true boundary between the parties' properties. She claims that the true boundary is a line that the parties' predecessors in interest have long recognized and treated as the boundary, since at least 1975, that runs east from the western border along the seam in the asphalt of the parties' parking lots, continuing along a line where defendant's parking lot abuts an area of grass to Harvey Street. This long-established boundary line asserted by plaintiff is located several feet south of the actual surveyed boundary line.

Plaintiff brought this cause of action and sought a declaration under the doctrine of acquiescence that the long-established boundary line is the true boundary between the properties. Plaintiff also sought the grant of a prescriptive easement for plaintiff and her tenants' use over defendant's property for ingress and egress to and from Harvey Street.[2] Defendant moved for summary disposition under MCR 2.116(C)(10) and argued that there was no evidence that defendant or defendant's predecessor in interest, Dr. Krueger, ever acquiesced to any property line other than the actual surveyed boundary line. Defendant also argued that plaintiff could not establish that the use of the Penniman property by plaintiff or Rowe, plaintiff's predecessor in interest, to access Harvey Street was adverse or hostile because their use was under the belief that they had Dr. Krueger's permission to use the property for ingress and egress to and from Harvey Street. The trial court granted defendant's motion and ruled that acquiescence did not occur through the statutory 15-year period and that plaintiff's use of the property was not adverse and hostile on these facts.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A motion brought under MCR

---

[2] Defendant filed a counter-complaint that alleged counts of trespass and nuisance. These claims are not at issue in this appeal.

2.116(C)(10) tests the factual sufficiency of a complaint to determine whether there exists a genuine issue of material fact for trial. *Id.* at 120. "In reviewing a motion for summary disposition brought under MCR 2.116(C)(10), a trial court considers affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Quinto v Cross & Peters, Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). "A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the affidavits or other documentary evidence show that there is no genuine issue in respect to any material fact, and the moving party is entitled to judgment as a matter of law." *Id.* "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "A trial court may not make findings of fact or weigh credibility in deciding a motion for summary disposition." *In re Handelsman*, 266 Mich App 433, 437; 702 NW2d 641 (2005).

## III. ACQUIESCENCE

Plaintiff claims that summary disposition of her claim of acquiescence was improper because genuine issues of fact exist regarding whether the parties and their predecessors in interest acquiesced to the long-established line along the seam in the asphalt of the parties' parking lots and continues along where an area of grass meets defendant's parking lot as the true boundary between the properties. We disagree.

The basis for the doctrine of acquiescence "is the existence of an *agreed line or boundary*. Only when there has been some agreement, whether tacit or overt, as to the location of the boundary line does the question of acquiescence become important." *Wood v Denton*, 53 Mich App 435, 439-440; 219 NW2d 798 (1974). The "applicability of the doctrine commonly arises where adjoining property owners mistakenly treat a boundary line . . . as the property line." *Walters v Snyder*, 239 Mich App 453, 458; 608 NW2d 97 (2000) (quotation marks, citations, and brackets omitted). "The underlying reason for the rule of acquiescence is the promotion of peaceful resolution of boundary disputes." *Killips v Mannisto*, 244 Mich App 256, 260; 624 NW2d 224 (2001).

Our courts recognize three theories of acquiescence: "(1) acquiescence for the statutory period, (2) acquiescence following a dispute and agreement, and (3) acquiescence arising from intention to deed to a marked boundary." *Walters*, 239 Mich App at 457. At issue here is plaintiff's claim of acquiescence for the statutory period. Under this theory, "[t]he doctrine of acquiescence provides that where adjoining property owners acquiesce to a boundary line for at least fifteen years, that line becomes the actual boundary line." *Killips*, 244 Mich App at 260. A claim of acquiescence "requires merely a showing that the parties acquiesced in the line and treated the line as the boundary for the statutory period, irrespective of whether there was a bona fide controversy regarding the boundary." *Mason v City of Menominee*, 282 Mich App 525, 529; 766 NW2d 888 (2009). "Unlike a claim based on adverse possession, an assertion of acquiescence does not require that the possession be hostile or without permission." *Killips*, 244 Mich App at 260.

"Although Michigan precedent 'has not defined an explicit set of elements necessary to satisfy the doctrine of acquiescence,' case law has held that acquiescence is established when a preponderance of the evidence 'establishes that *the parties* treated a particular boundary line as the property line.'" *Mason*, 282 Mich App at 529-530, quoting *Walters*, 239 Mich App at 457-458 (emphasis altered). Thus, the appropriate focus is on the conduct of the parties and whether they "treated a particular boundary line as the property line." *Walters*, 239 Mich App at 458 (emphasis omitted). In making this determination, the evidence is viewed "as a whole, as opposed to examining the various occurrences in isolation." *Id.* "The acquiescence of predecessors in title can be tacked onto that of the parties in order to establish the mandated period of fifteen years." *Killips*, 244 Mich App at 260.

The deposition testimony established that, dating back to 1975, when Rowe, plaintiff's predecessor in interest, acquired the Harvey property, he understood and treated the southern boundary as running east from the western border along a line marked by the seam in the asphalt of the parties' parking lots and continuing along the line where an area of grass abuts defendant's parking lot to Harvey Street, which lies several feet south of the actual surveyed property line.[3] Rowe further testified regarding his treatment of the asserted line as the boundary between the properties. Rowe mowed and maintained the lawn to the asserted boundary line where the grass meets the blacktop at defendant's parking lot. He had his parking lot blacktopped several times during his period of ownership and totally resurfaced his blacktop around 12 to 15 years ago, where the blacktop went to "what appeared to be the existing line" at the "seam." When Rowe and Dr. Krueger, defendant's predecessor in interest, had their driveways sealed, both parties went up to what appeared to be the asserted boundary line at the seam in the ground; and Rowe had a tree trimmed and then removed eight to ten years ago located in the area where the grass meets defendant's parking lot that he assumed was on his (Rowe's) side of the property line. Further, plaintiff testified that for many years, she always observed Rowe, her father, treat the line where the grass and defendant's parking lot meet and where the parking lots meet at the seam of the asphalt, as the boundary line. And, after acquiring the property from Rowe, plaintiff continued to have her lawn service mow the grass up to the asserted boundary line and, when she performed maintenance to the parking lot, such as pulling and spraying for weeds, she did so on her side of the seam of the parking lot. We agree that this testimony sufficiently established that plaintiff and Rowe, her predecessor in interest, understood and treated the boundary line asserted by plaintiff as the true boundary between the properties since Rowe acquired it in 1975.

However, showing that *one party* treated a line as the property boundary is not enough. See *Mason*, 282 Mich App at 529-530; *Walters*, 239 Mich App at 457-458. Instead, to sustain her claim of acquiescence, plaintiff must also present evidence that defendant, who purchased

---

[3] Rowe described this boundary line as "so definitive where the grass and the blacktop met and where the two blacktops met" and "so obvious there was no need to have a discussion about it." Rowe testified that "everything was always done up to that line" and "that's the way it always has been" so he assumed the boundary line asserted by plaintiff was the "true legal property line." He further testified that the surveyed line is not the line "we've been using for the 37 years that I've used the property."

the Penniman property in 2010, and defendant's predecessor in interest, Dr. Krueger, who had owned that property since the mid-1970s, tacitly or overtly acquiesced to and treated the asserted boundary line as the true boundary between the parties' properties for the 15-year statutory period. There is no evidence that defendant or its predecessor in interest treated or acquiesced to the boundary line asserted by plaintiff as the true and actual boundary for a 15-year period.

In 2014, defendant placed concrete parking blocks just south of the actual surveyed property line, which prevented plaintiff's tenants from entering and exiting through defendant's property, and planned a landscaping project along the actual surveyed line. Defendant's mowing practices also do not indicate an agreement to the asserted boundary line. Instead, defendant testified in his deposition that, after acquiring the Penniman property, he began using the same mowing service as plaintiff and there was never a discussion regarding the property boundary.

Also, there is no evidence that defendant's predecessor in interest, Dr. Krueger, ever expressly acknowledged that the boundary was a line running along the seam of the asphalt of parties' parking lots, which continued along to where the area of grass meets defendant's parking lot. To the contrary, Dr. Krueger stated in his affidavit that he did not agree that he and Rowe behaved as if the boundary line between their properties was located closer toward his Penniman property then is actually reflected in the survey. In fact, Dr. Krueger, in his affidavit, cited examples of his conduct with respect to the boundary to show that he did not treat the line asserted by plaintiff as the true boundary line.[4] This evidence presented by defendant sufficiently established that Dr. Krueger did not acquiesce to the boundary line asserted by plaintiff.

We reject plaintiff's claim that Dr. Krueger acquiesced to the western portion of the true boundary as being represented by a seam in the asphalt when Rowe, her predecessor in interest, resurfaced his parking lot up to that seam. Although this fact supports plaintiff's assertion that *Rowe believed and treated* the seam in the asphalt as the boundary line, there is no evidence indicating that *Dr. Krueger* ever acquiesced to the seam line as the boundary any time before or at the time of the resurfacing project. In fact, Rowe admitted that, at the time of the resurfacing, he never discussed with Dr. Krueger "where the line should be" and never discussed the

_____

[4] Specifically, Dr. Krueger stated that he erected a retaining wall along the western boundary of the Penniman property and in so doing built the wall close to but just short of his northern boundary with plaintiff's Harvey property so as not to inadvertently cross over the boundary. Where Dr. Krueger's portion of the wall ends is evidenced by a vertical seam of the retaining wall, which lies several feet north of the asphalt seam in the parking lot and close to the parking blocks placed by defendant. Further, Dr. Krueger stated that his lawn-maintenance person routinely cut the grass and trimmed around and maintained a large tree located on the grassy area, which lies north and adjacent to his parking lot, indicating that Dr. Krueger understood that his property line, as the survey indicates, extended eight to ten feet north of his parking lot into the grassy area and he treated it as such. Additionally, Dr. Krueger stated that he erected several "no parking" signs along the boundary of the two properties, which were placed in the grass area that plaintiff claims is her property.

boundary line on any other occasion with Dr. Krueger. Moreover, assuming arguendo that Dr. Krueger's lack of any objection to Rowe's placement of his blacktop up to the existing seam in the asphalt shows that he tacitly acquiesced to the seam as the boundary line, plaintiff failed to establish that Dr. Krueger acquiesced to that line for the requisite 15-year statutory period. Rowe testified in 2015 that the resurfacing project occurred 12 to 15 years earlier, which means at the earliest, it happened in 2003. The record shows that defendant placed the parking blocks along the actual surveyed boundary line in 2014. Thus, assuming that the parties' treatment of the blacktop resurfacing was a mutual acquiescence to the boundary, this period lasted at most 11 years, which is short of the requisite 15-year period. We note that plaintiff also relies on Rowe's testimony that Dr. Krueger went up to the existing seam in the asphalt when he seal-coated his parking lot to establish that Dr. Krueger acquiesced to the line marked by the seam in the asphalt as the true boundary line. But Rowe did not provide a specific timeframe when the alleged seal-coating occurred to establish that Dr. Krueger's conduct in sealcoating the pavement up to the existing seam in the asphalt established that he acquiesced to the seam as the boundary line for the requisite 15-year statutory period.

We also reject plaintiff's claim that Dr. Krueger acquiesced to the eastern portion of the boundary as being where defendant's parking lot abuts the grass area. Plaintiff relies on Rowe's testimony that he removed a tree from the area of grass a few feet from defendant's parking lot without any objection by Dr. Krueger. However, Rowe admitted that he had no discussions with Dr. Krueger regarding the tree to indicate that Dr. Krueger agreed that the tree was on Rowe's side of the boundary line and that the responsibility for its removal thus lay with Rowe. In fact, Dr. Krueger stated that he knew that the tree was located within his own property. While he was aware that the tree was removed without his knowledge or consent, he made no objection because the tree was dead. Assuming arguendo that Dr. Krueger's failure to object to Rowe's removal of the tree in the area of grass on defendant's side of the surveyed boundary line indicates that Dr. Krueger tacitly acquiesced to the line where that area of grass abuts defendant's parking lot as the true boundary, plaintiff cannot establish that Dr. Krueger acquiesced to the line for the 15-year statutory period because this single instance of acquiescence, according to Rowe, occurred at the earliest, in 2005. Plaintiff relies on Rowe's mowing practices at that time to show that the parties acquiesced to the grass area being located within the Penniman property, but this, again, shows that Rowe treated the grass as his own. It does not show that Dr. Krueger treated it as Rowe's property. Indeed, Dr. Krueger testified that he also had his landscaping company maintain that area of land. Further, the fact that Dr. Krueger installed "no parking" signs *on the grass portion* north of where plaintiff claims the parties understood the boundary to be demonstrates that Dr. Krueger did not view the grass/parking lot abutment as the property line.

Therefore, we hold that plaintiff failed to establish that *both* parties (and/or their predecessors in interest) acquiesced to or treated the line asserted by plaintiff as the true boundary line between the properties for the requisite 15-year statutory period. Although the evidence presented established that plaintiff and Rowe believed and treated the line marked by the seam in the asphalt of the parties' parking lots continuing to a line where the area of grass meets defendant's parking lot as the boundary between the properties since 1975, the evidence failed to establish that defendant and Dr. Krueger agreed that the line asserted by plaintiff was the true boundary line or treated it as such for the requisite 15-year statutory period.

Accordingly, the trial court did not err when it granted defendant's motion for summary disposition on this claim.

## IV. PRESCRIPTIVE EASEMENT

Plaintiff argues that the trial court erred when it granted defendant's motion for summary disposition on her claim for a prescriptive easement over defendant's parking lot for ingress and egress to and from Harvey Street. We disagree.

"An easement represents the right to use another's land for a specified purpose." *Plymouth Canton Community Crier, Inc v Prose*, 242 Mich App 676, 678-679; 619 NW2d 725 (2000). "An easement by prescription is based upon the legal fiction of a lost grant, and results from action or inaction leading to a presumption that the true owner of the land, by his acquiescence, has granted the interest adversely held." *Slatterly v Madiol*, 257 Mich App 242, 260; 668 NW2d 1545 (2003) (quotation marks and citations omitted). "[A]n easement does not displace the general possession of the land by its owner, but merely grants the holder of the easement qualified possession only to the extent necessary for enjoyment of the rights conferred by the easement." *Matthews v Dep't of Natural Resources*, 288 Mich App 23, 37; 792 NW2d 40 (2010) (quotation marks and citation omitted). "An easement by prescription results from use of another's property that is open, notorious, adverse, and continuous for a period of fifteen years." *Plymouth Canton Community Crier*, 242 Mich App at 679, citing MCL 600.5801 and *Goodall v Whitefish Hunting Club*, 208 Mich App 642, 645; 528 NW2d 221 (1995).

> "'To establish an easement by prescription there must be: *First*, continued and uninterrupted use or enjoyment; *second*, identity of the thing being enjoyed; *third*, a claim of right adverse to the owner of the soil known to and acquiesced in by him. The accepted rule is that the user must be exercised by the owner of the dominant tenement, and must be open, peaceable, continuous, and as of right. It is sometimes declared that it must also be exclusive, but the term 'exclusive use,' does not mean that no one may use the way except the claimant of the easement. It means no more than that his right to do so does not depend on a like right in others.'" [*Plymouth Canton Community Crier*, 242 Mich App at 679-680, quoting *St Cecelia Society v Universal Car & Serv Co*, 213 Mich 569, 577; 182 NW 161 (1921), quoting 9 RCL, Easements, ¶ 33.]

"The plaintiff bears the burden to demonstrate entitlement to a prescriptive easement by clear and cogent evidence." *Matthews*, 288 Mich App at 37. Thus, to survive defendant's motion for summary disposition, plaintiff had to show that there was a genuine issue of material fact concerning whether plaintiff's use of defendant's property "'was of such a character and continued for such length of time as to ripen into an easement by prescription,'" i.e., that the use was "open, notorious, adverse, and continuous for a period of fifteen years." *Plymouth Canton Community Crier*, 242 Mich App at 679, quoting *Banach v Lawera*, 330 Mich 436, 439; 47 NW2d 679 (1951).

We agree that the evidence presented with respect to the use by plaintiff and Rowe of the Penniman property's parking lot to access Harvey Street sufficiently established that the character of the use was open, notorious, and continuous for a period of 15 years. At issue here

is the element of "adverse" use. The element of hostility or adversity "as employed in the law of adverse possession is a term of art and does not imply ill will." *Id.* at 681 (quotation marks and citations omitted). Instead, the "[u]se of another's property qualifies as adverse when made under a claim of right when no right exists." *Id.* Simply put, "[a]dverse or hostile use is use inconsistent with the right of the owner, without permission asked or given," which would entitle the owner to bring an action for trespass. *Id.* (quotation marks and citations omitted). Our Supreme Court has further explained, "The belief or knowledge of the adverse claimant is not as important as his intentions. *The intention is the controlling consideration* and it is not the knowledge or belief that another has a superior title, but the recognition of that title that destroys the adverse character of possession." *Walker v Bowen*, 333 Mich 13, 20-21; 52 NW2d 574 (1952) (emphasis added), quoting *Smith v Feneley*, 240 Mich 439, 441; 215 NW2d 353 (1927). Hence, "[m]ere permissive use of another's property . . . will not create a prescriptive easement." *Plymouth Canton Community Crier*, 242 Mich App at 679.

At first glance, the testimony regarding the continuous and open character of the use of the Penniman property's parking lot by plaintiff and her predecessor in interest, Rowe, and their tenants for ingress and egress, without a grant of permission from Dr. Krueger, defendant's predecessor in interest, suggests the use was under a claim of right.[5] However, the controlling consideration is the nature of the user and his adverse *intent in using the property as his own* during the prescriptive period. *Smith*, 240 Mich at 441-442. Critically, here, Rowe acknowledged that he believed that he and his tenants had Dr. Krueger's permission, albeit implied, to use the Penniman property's parking lot, which shows that Rowe could not have intended to assert a claim of right that was hostile or adverse to Krueger's title.[6] The evidence also shows that plaintiff *believed that her tenants had permission* to use the Harvey property for

---

[5] We note that there is no evidence that Rowe ever requested permission from Dr. Krueger or that Dr. Krueger or defendant ever expressly granted Rowe or plaintiff permission to use the parking lot for ingress and egress to and from Harvey Street. Rowe testified that he never had any discussions with Dr. Krueger regarding the use of his parking lot; Rowe was not aware of any agreements, oral or written, regarding the use of the Penniman property for ingress and egress; Dr. Krueger never objected to him about his or his tenants' pattern of crossing over his parking lot; and Rowe had no knowledge whether Dr. Krueger was even aware that his tenants were crossing over his lot.

[6] Specifically, Rowe testified:

> *Q.* . . . [I]s it your belief that you had Doctor Krueger's permission to cross over that line?
>
> *A.* That was my belief.
>
> *Q.* And that your tenants had permission, correct?
>
> *A.* Yes, that's correct.

-8-

ingress and egress.[7] This evidence shows that Rowe and plaintiff used the Penniman property for ingress and egress because they believed they had permission from the true owner to do so, not because they thought they were asserting an independent right to use it.

Therefore, the belief of plaintiff and Rowe that their use of the Penniman property was with the true owner's permission is fatal to plaintiff's claim for a prescriptive easement. It is well established that such permissive use[8] cannot ripen into a prescriptive easement because it was not under a claim of right hostile or adverse to the true owner. See *Plymouth Canton Community Crier*, 242 Mich App at 679-681. Accordingly, the trial court did not err when it granted defendant's motion for summary disposition on plaintiff's claim for a prescriptive easement.

Affirmed. Defendant, as the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Henry William Saad
/s/ Deborah A. Servitto
/s/ Michael F. Gadola

---

[7] Plaintiff stated that she knew "that tenants had been told that that [exiting from the Harvey property through defendant's parking lot to access Harvey Street] was permissible and allowed." Additionally, in response to defendant's e-mail indicating that her tenants are "still crossing over the parking lot, which is not allowed," plaintiff stated, "I have notified my tenants that we must use only our property for parking and should avoid crossing into your lot. . . . Once I come over to see it in person, I'll have a better idea of what I need to do to ensure that our vehicles can park and maneuver without crossing onto your property." Plaintiff's statement acquiescing to defendant's request not to cross over his parking lot further demonstrates plaintiff's belief that the use was permissive and recognizes defendant's superior title.

[8] Again, the fact that there may not have been permission given is not controlling, as long as the claimants *thought* they had permission. See *Walker*, 333 Mich at 20-21.