*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RAEANNE DEBRUYN,

Plaintiff-Appellee,

UNPUBLISHED
July 15, 2021

v

ANTOINETTE DILORENZO and MARY
GAROFALO,

Defendants-Appellants.

No. 351253
St. Clair Circuit Court
LC No. 2018-001618-CH

Before: RIORDAN, P.J., and M. J. KELLY and SHAPIRO, JJ.

PER CURIAM.

Defendants appeal by right from the trial court's judgment quieting title to real estate in plaintiff's favor. Following a two-day bench trial, the trial court issued an opinion determining that plaintiff was the owner of the property by adverse possession. On appeal, defendants argue that plaintiff did not establish the elements of adverse possession and that the doctrine of adverse possession is contrary to public policy. We affirm.

## I. BACKGROUND

The property at issue is a parcel of land, Lot 227, in St. Clair Country Club Estates Subdivision ("the subdivision"). The subdivision was platted in 1926, and consists of over 300, 40-foot wide platted parcels. There are about 15 private residential structures within the subdivision, mostly in the southern half, which are served by gravel roads. Plaintiff's home is located on three lots (228, 229, and 230) in the subdivision. In 2003, plaintiff and her then husband acquired their lots from the husband's grandmother's estate; plaintiff is now the sole owner of the property following her 2018 divorce. Lot 227 consists of grass and is adjacent to plaintiff's lots. Specifically, Lot 227 is located between plaintiff's home and a road (Lake Park Drive) bordering the south end of the subdivision. Defendants own over 200 lots in the subdivision, including Lot 227. Defendants, who are cousins, acquired their lots in 2008 from D&T Construction Company ("D&T"), in which their respective fathers were partners. Most of defendants' lots are in the northern two-thirds of the subdivision, which is undeveloped. Defendants do not own any lots contiguous to Lot 227.

-1-

In 2018, plaintiff filed this action seeking to quiet title to Lot 227 under the doctrine of adverse possession, and a bench trial was held in June 2019. Plaintiff testified that she was familiar with Lot 227 before 2003 because she would visit the prior owner—her ex-husband's grandmother, Betty Taube—often. She explained that her ex-husband's family-maintained Lot 227 by mowing the grass and raking the leaves and would use it for parking at family gatherings. When plaintiff and her ex-husband acquired their lots from Taube's estate, plaintiff knew they did not own Lot 227 but they continued using it because that is what her husband's family had always done. Specifically, plaintiff and her family continued to mow the grass on Lot 227 and used it for various recreational activities throughout the year. In the winter, plaintiff's three sons use the lot as a hockey rink by shoveling snow and placing nets on the low area of the lot that is prone to flooding. Plaintiff's family use the lot for various other sports games in the warmer months and plaintiff has planted a garden, rosebushes and tomato plants on the lot. Plaintiff also keeps a metal swing on Lot 227, removing it only when there is flooding. When plaintiff's home was rebuilt in 2012 trusses and other materials were placed on Lot 227 during the construction. Plaintiff's mother visits plaintiff about twice a week and testified that she has observed plaintiff's family use and maintain Lot 227 and that she has parked her car on the lot.

Defendant Antoinette DiLorenzo testified that she and defendant Mary Garofalo were currently in the process of developing the property they own in the subdivision. So far, they had begun construction on a model home across from plaintiff's home but had only completed the basement. Antoinette testified that defendants planned on using Lot 227 for signage and directional. She explained that the entire site was being surveyed, including Lot 227. When asked whether defendants cut the lawn on Lot 227, Antoinette testified that she pays someone to "brush hog"[1] the entire site. She explained that if the worker did not mow Lot 227, it is because plaintiff "beat [her] to the punch." When asked if she could identify anything that she or D&T have done on Lot 227, Antoinette explained that meetings with Ira Township and others have occurred to extend sewer and water to the entire site, including Lot 227. Antoinette also noted that defendants have paid the tax assessment for Lot 227. She testified that she has never seen anyone on Lot 227. However, when presented with a photograph of a different lot in the subdivision, she incorrectly identified it as Lot 227.

The defense called Vincent DiLorenzo, Antoinette's father and a partner in D&T, who testified to the efforts he made to develop the subdivision on defendants' behalf. Frank Hanna also testified for the defense regarding the surveying he had done in the subdivision for defendants and D&T. Hanna testified that he had entered Lot 227 "a couple times" for surveying purposes and that he spoke to plaintiff on a different occasion regarding the water service for her property.

Following the bench trial, the trial court issued a written opinion finding that plaintiff had presented uncontradicted testimony of uninterrupted possession and open use of Lot 227 since

---

[1] Vincent DiLorenzo testified that "a brush hog machine" is "a large machine and it tackles a lot more than just grass. It tackles small trees and you use that when it's pretty rough." Plaintiff testified that she has never observed anyone brush hog Lot 227 and that the grass on that lot has never been high enough to be cut by a brush hog.

2003. The court rejected defendants' argument that Lot 227 was "wild land" and found it irrelevant that the northern two-thirds of the subdivision owned by defendants was undeveloped. "What is relevant," the court reasoned, "is that [d]efendants have not used or been on Lot 227 in well over 15 years" and that no steps had been taken to stop plaintiff and her predecessors from using the property.[2] The court found that plaintiff's possession and use of Lot 227 had been visible, open, exclusive, continuous and uninterrupted since at least 2003, as well as adverse and hostile. Finally, the court rejected defendants' argument that Hanna interrupted plaintiff's claim of continuous use by entering Lot 227 for surveying purposes.

## II. ANALYSIS

## A. ELEMENTS OF ADVERSE POSSESSION

Defendants first argue that the trial court erred by concluding that plaintiff established the elements of adverse possession. We disagree.[3]

"A party claiming adverse possession must show clear and cogent proof of possession that is actual, continuous, open, notorious, exclusive, hostile, and uninterrupted for the relevant statutory period." *Marlette Auto Wash, LLC v Van Dyke SC Props, LLC*, 501 Mich 192, 202; 912 NW2d 161 (2018). The statutory period is 15 years. See *id*.; MCL 600.5801(4). "Determination of what acts or uses are sufficient to constitute adverse possession depends upon the facts in each case and to a large extent upon the character of the premises." *Burns v Foster*, 348 Mich 8, 14; 81 NW2d 386 (1957). See also *Jonkers v Summit Twp*, 278 Mich App 263, 273; 747 NW2d 901 (2008). Accordingly, the first step is to determine the character of the disputed property.

Defendants argue that Lot 227 is wild land and rely on *Du Mez v Dykstra*, 257 Mich 449, 451; 241 NW2 182 (1932), in which the Supreme Court explained that "[o]ne may acquire a right of way by prescription[4] over wild and uninclosed lands. But, while use alone may give notice of adverse claim of inclosed premises, the weight of authority is that it raises no presumption of hostility in the use of wild lands." See also *Davids v Davis*, 179 Mich App 72, 82-83; 445 NW2d 460 (1989) (affirming quiet title by adverse possession of a "wild, undeveloped, landlocked" tract of land when the plaintiff had put up a wire fence around most of the parcel and strung chains across a path on the boundary). Relying on this caselaw, defendants argue that plaintiff's

---

[2] The court noted that, while not necessary to plaintiff's claim, Lot 227 had been used "well prior" to 2003 by plaintiff's predecessor, Betty Taube.

[3] "Following a bench trial, we review for clear error the trial court's factual findings and review de novo its conclusions of law." *Ligon v Detroit*, 276 Mich App 120, 124; 739 NW2d 900 (2007). "A claim for adverse possession is equitable in nature," and "decisions regarding equitable claims, defenses, doctrines, and issues are reviewed de novo." *Beach v Lima Twp*, 283 Mich App 504, 508; 770 NW2d 386 (2009).

[4] *Du Mez* pertained to the related doctrine of prescriptive easements. See *Matthews v Natural Resources Dep't*, 288 Mich App 23, 37; 792 NW2d 40 (2010) ("A prescriptive easement requires elements similar to adverse possession, except exclusivity.").

maintenance and use of Lot 227 for recreational activities, gardening and parking was insufficient to establish adverse possession.

To begin, it is clear that Lot 227, by itself, is not wild land. The photographs of the lot admitted at trial show that the lot presents as a grass yard in a residential area. There are no trees on the lot, and it is not contiguous to any wooded lot. At the time of trial, the grass had not been cut recently because of temporary flooding, but the inability to cut wet grass does not render the lot wild because the photographs admitted at trial show that the grass is well maintained when plaintiff is able to do so.

Defendants' real argument for why Lot 227 is wild land is that the lot should be considered part of the lots they own in the northern part of the subdivision, which indisputably are undeveloped wild parcels. The trial court correctly rejected this argument. As noted, Lot 227 is not adjacent to the northern lots or any other lot owned by defendants. Rather, it is located in the southern half of the subdivision between plaintiff's home and a road in a developed area of the subdivision. Also, Lot 227 is taxed as an individual parcel. Thus, there is no factual basis for concluding that Lot 227 should be considered the same type of land as defendants' other parcels. Nor do defendants identify any caselaw supporting their position that separate and distinct parcels should be considered collectively for purposes of adverse possession if part of a larger development. For these reasons, the trial court did not clearly err by finding that Lot 227 was not wild land.

As indicated, Lot 227 is residential in nature, and plaintiff's use and maintenance of the lot for seasonal activities was consistent with the character of the property. Plaintiff and her family use Lot 227 for ice hockey during the winter and then for various activities during warmer months such as sports, gardening and parking, all while maintaining the lot by cutting the grass. In other words, for 15 years plaintiff has treated Lot 227 as part of her home's yard. Given the residential character of the disputed property, these types of uses were enough to show actual possession and to openly and publicly indicate that plaintiff had assumed control of the lot. See *Houston v Mint Group, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 353082); slip op at 8 ("[I]t is sufficient if the acts of ownership are of such character as to indicate openly and publicly an assumed control or use such as is consistent with the character of the premises in question."). Defendants rely on the facts that plaintiff did not pay taxes for Lot 227 or construct fencing or gating on the lot. Although payment of taxes for the disputed property is a factor that has supported of a finding adverse possession, see e.g., *Davids*, 179 Mich App at 83, it is not required. Similarly, fencing and the building of structures on the disputed property are not required to show adverse possession. See *Monroe v Rawlings*, 331 Mich 49, 56-57; 49 NW2d 55 (1951).

Defendants contend that they did not have notice of plaintiff's use of Lot 227. That defendants did not actually witness plaintiff's use of Lot 227 is not dispositive. "To constitute 'adverse holding,' [the] true owner must have actual knowledge of hostile claim, *or* possession must be so open, visible, and notorious as to raise presumption of notice of adverse claim." *Doctor v Turner*, 251 Mich 175, 187; 231 NW 115 (1930) (emphasis added). For the reasons discussed, given the residential nature of the disputed property, plaintiff's open use of Lot 227 for various activities was sufficient to put defendants on the notice that she had assumed possession of the lot. Further, it is unclear how often defendants visited Lot 227 (rather than the subdivision as a whole), and as the trial court reasoned, it is notable that Antoinette incorrectly identified a different parcel

in the subdivision as Lot 227. At the very least, a visit during the warmer months would have put defendants on notice that someone had been mowing Lot 227 rather than "brush hogging" it. Defendants also argue that plaintiff failed to make a claim of title, but the Supreme Court has explained that a claim of title may be established by open acts of ownership, see *Smith v Feneley*, 240 Mich 439, 442; 215 NW 353 (1927), and plaintiff met that standard. Accordingly, the trial court did not err by finding that plaintiff's use of the property was open, visible and notorious.

Plaintiff's possession of Lot 227 was hostile because she did not have defendants' permission to use the lot. *Wengel v Wengel*, 270 Mich App 86, 92; 714 NW2 371 (2006) ("[H]ostile use is that which is inconsistent with the right of the owner, without permission asked or given, and which would entitle the owner to a cause of action against the intruder.") (quotation marks and citation omitted). Further, plaintiff's use of the Lot 227 shows an intent to claim the lot as her own to the exclusion of other. See *Smith*, 240 Mich at 442 (the adverse possessor must have "the intention of holding the property as his own to the exclusion of all others."). Namely, plaintiff uses the lot for hockey, wiffle ball, gardening and parking; she also places a metal swing on the lot when able to do so. And the trial court correctly found that defendants' surveyor's entry onto Lot 227 did not defeat plaintiff's claim of exclusivity. "Possession refers to an exercise of dominion over the property, and there may be degrees even in the exclusiveness of the exercise of ownership." *Jonkers*, 278 Mich App at 274-275 (quotation marks and citation omitted). Although the surveyor was defendants' agent, and so not a trespasser, his brief entry onto Lot 227 for a limited purpose did not negate plaintiff's proofs establishing her possession of Lot 227 and an intent to exclude others. Cf. *Waisanen v Superior Twp*, 305 Mich App 719, 722; 854 NW2d 213 (2014) (holding that "occasional trespasses [by the public] do not suffice to defeat a claim of exclusivity.").

Defendants also argue that plaintiff's possession of Lot 227 was not continuous but rather constituted mere occasional trespass. See *Bankers Trust Co of Muskegon v Robinson*, 280 Mich 458, 465; 273 NW 768 (1937) ("[A]cts amount[ing] to no more than occasional trespasses or acts of ownership . . . do not constitute continuous possession."). However, "continuous use does not mean constant use." *Dyer v Thurston*, 32 Mich App 341, 344; 188 NW2d 633 (1971). See also *Dummer v US Gypsum Co*, 153 Mich 622, 631; 117 NW 317 (1908). The testimony indicates that plaintiff and her family uses Lot 227 nearly year-round for annual, seasonal recreational activities. Accordingly, her possession of Lot 227 was continuous given the residential character of the property.

Despite the fact that defendants did not use Lot 227 for at least 15 years, they argue that their development efforts for the entire subdivision interrupted plaintiff's claim of continuous possession. First, defendants' efforts to arrange for sewer and water service for the subdivision did not pertain specifically to Lot 227.[5] More important, these efforts toward future development

---

[5] In responding to an evidentiary objection, the trial court stated that it was only interested in hearing evidence regarding Lot 227 but that "[t]o the extent that there is a direct relationship . . . to or with Lot 227 and the bigger development plans of the lots within the platted subdivision I'm going to give [defense counsel] some latitude there." The trial court later sustained an objection to testimony about the larger development but nonetheless heard ample testimony about the

did not interrupt plaintiff's *possession* of Lot 227. See *Kipka v Fountain*, 198 Mich App 435, 440; 499 NW2d 363 (1993) ("If the true property owner regains *possession* of the land and loses it again, a new cause of action accrues.") (emphasis added). See also MCL 600.5843 ("If the person who has a right to make an entry on land or a claim for the possession of land regains *possession* of it before the period of limitations has run and then loses possession of the premises again, the subsequent loss shall be deemed to give rise to a new claim which has its own period of limitations.") (emphasis added). The same can be said for defendants' surveyor briefly entering Lot 227. Because defendants did not resume possession of Lot 227 during the 15-year period, the trial court did not err by finding that plaintiff had exclusive and continuous possession of the lot.

## B. PUBLIC POLICY ARGUMENT

Defendants also argue that the doctrine of adverse possession is inconsistent with public policy, especially when the trespasser knew she did not own the land.[6]

To the extent that defendants ask us to completely overrule the doctrine of adverse possession, we have no authority to do so. Adverse possession has been codified since 1846. *Marlette Auto Wash, LLC*, 501 Mich at 201. Specifically, MCL 600.5801 provides in part:

> No person may bring or maintain any action for the recovery or possession of any lands or make any entry upon any lands unless, after the claim or right to make the entry first accrued to himself or to someone through whom he claims, he commences the action or makes the entry within the periods of time prescribed by this section.

> \* \* \*

> (4) In all other cases under this section, the period of limitation is 15 years.

"At the root of claims of title by adverse possession . . . is the statute of limitations on actions to recover possession of land. In most cases, an action for the recovery or possession of land must be brought within fifteen years after the cause of action first accrues." *Kipka*, 198 Mich App at 438. Thus, while there are additional elements to adverse possession, the expiration of the

---

development plans over the course of the trial. In any event, defendants do not appeal any of the trial court's evidentiary rulings and so their claim that the trial court "grievously erred in refusing to even hear evidence to support the actions taken by [defendants] establishing their dominion" will not be addressed.

[6] Defendants raised these arguments for the first time in a motion for reconsideration and so failed to properly preserve this issue for appeal. See *Vushaj v Farm Bureau Gen Ins Co of Mich*, 284 Mich App 513, 519; 773 NW2d 758 (2009). "[G]enerally a failure to timely raise an issue waives review of that issue on appeal." *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008) (quotation marks and citation omitted). This Court has discretion to consider a waived issued if it "involves a question of law and the facts necessary for its determination have been presented." *In re Conservatorship of Murray*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 349068); slip op at 4.

statute of limitations is central to such a claim. *Kipka*, 198 Mich App at 439 ("To claim by adverse possession, one must show that the property owner of record has had a cause of action for recovery of the land for more than the statutory period.").

Because the Legislature has codified adverse possession into the statute of limitations, this Court is not at liberty to overrule the doctrine on the ground that it violates public policy. See *Rembert v Ryan's Family Steak Houses, Inc*, 235 Mich App 118, 131; 596 NW2d 208 (1999) ("[P]ublic policy pronouncements of the Michigan Legislature, enacted as statutes, are binding on this Court."). See also *Okrie v Michigan*, 306 Mich App 445, 459; 857 NW2d 254 (2014) ("[Courts] may not consider the wisdom of statutes properly enacted by the Legislature."). Accordingly, even assuming defendants' overarching argument that public policy no longer justifies adverse possession, we cannot afford them any relief on that ground.

Defendants take particular issue with a trespasser obtaining property through adverse possession. However, trespass is a necessary step in any adverse possession case, as the adverse possessor must go beyond mere trespass to obtain title. See *Barley v Fisher*, 267 Mich 450, 453; 255 NW 233 (1934) ("[O]ne claiming title by adverse possession must show positive and affirmative acts of ownership. Mere occasional trespasses are not sufficient."); *Doctor*, 251 Mich at 187 ("[T]he possession must be more than a possession which will enable a person, on the ground of possessory title to maintain trespass or ejectment against a stranger."). Indeed, for the possession to be hostile, the adverse possessor cannot have the owner's permission. *Wengel*, 270 Mich App at 92.

Defendants also emphasize that plaintiff knew that she did not own Lot 227. There is no exception to adverse possession in Michigan caselaw, however, for a willful trespass. To the contrary, in determining that a mistaken trespasser may maintain a claim for adverse possession, this Court reasoned that "it would be unjust to limit the application of the doctrine of adverse possession to those adverse possessors who knew the possession was wrong, while excluding those whose possession was by mistake, thereby rewarding the thief while punishing the person who was merely mistaken." *Gorte v Dep't of Transp*, 202 Mich App 161, 170; 507 NW2d 797 (1993), citing *DeGroot v Barber*, 198 Mich App 48, 53; 497 NW2d 530 (1993). In other words, it was assumed by this Court that willful trespassers could obtain title by adverse possession. The Supreme Court has indicated the same:

> Claim of title or claim of right is essential to adverse possession, but it is not necessary that an adverse claimant should believe in his title, or that he should have any title. *He may have no shadow of title and be fully aware of that fact*, but he must claim title. He may go into possession without any claim of title, but his possession does not become adverse until he asserts one; and he may assert it by openly exercising acts of ownership, with the intention of holding the property as his own to the exclusion of all others. [*Smith*, 240 Mich at 442 (emphasis added).]

Given this caselaw, it is a settled question under Michigan law that a willful trespasser may obtain title through adverse possession, and defendants do not argue otherwise. And we are bound to follow Supreme Court precedent, *Maier v Maier*, 311 Mich App 218, 222-223; 874 NW2d 725 (2015), as well as published decisions from this Court decided after November 1, 1990, MCR 7.215(J)(1).

In sum, this Court is not at liberty to overrule the longstanding common law doctrine of adverse possession that has been codified into statute, nor do we see a basis to do so.

Affirmed.

/s/ Michael J. Riordan
/s/ Michael J. Kelly
/s/ Douglas B. Shapiro