*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GERARDA BROWN,

      Plaintiff-Appellant,

v

RICK T. LOFTUS and GAIL A. LOFTUS,

      Defendants-Appellees.

UNPUBLISHED
August 17, 2023

No. 362686
Manistee Circuit Court
LC No. 2021-017293-CH

Before: M. J. KELLY, P.J., and SHAPIRO and REDFORD, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's judgment in favor of defendants entered following a bench trial held on June 29, 2022, on plaintiff's claim to quiet title to a property located in Manistee County that she alleged she adversely possessed. We affirm.

## I. FACTUAL BACKGROUND

Plaintiff purchased property in Wellston, Michigan during 1999 by land contract and on July 30, 2015, Kathleen Reau conveyed the property to her by warranty deed recorded on May 16, 2016. The warranty deed's property description defines plaintiff's land as:

> A part of Section Ten (10), Township Twenty-one (21) North, Range Thirteen (13) West; commencing at the East Quarter Corner of said Section 10; also being the place of beginning; thence South 5°8' East 487.21 feet; thence South 86°01' West 313.91 feet; thence North 5°11' West 487.36 feet; thence North 86°03' East 314.2 feet to place of beginning, reserved North and East 33.00 feet thereof for road purposes, **except the South Two Hundred (200) feet thereof**. [Emphasis added.]

The land on the south of plaintiff's property was owned by John Matis, Jr., an Ohio resident. He conveyed his land by quitclaim deed to defendants, Rick and Gail Loftus, on October 13, 2020, his neighbors to the south. The quitclaim deed from Matis to defendants described the property as:

**The South Two Hundred (200) feet of a parcel of land described as**: Section Ten (10), Township Twenty-one (21) North, Range Thirteen ( 13) West; commencing at the East Quarter Corner of said Section 1 O; also being the place of beginning; thence South 5°8' East 487.21 feet; thence South 86°01' West 313.91 feet; thence North 5°11' West 487.36 feet; thence North 86°03' East 314.24 feet to place of beginning, reserved North and East 33.00 feet thereof for road purposes, parcel contains 3.5 acres more or less. [Emphasis added.]

After defendants obtained the property from Matis, they observed plaintiff's daughter dumping leaves from plaintiff's property onto the northern portion of their property and confronted her giving rise to the dispute over that portion. Defendants obtained a survey that confirmed their belief regarding the boundary of the parties' respective properties. Plaintiff sued defendants during April 2021 to quiet title to the property claiming that she owned it under claim of right pursuant to her warranty deed. Defendants denied that plaintiff owned the disputed property essentially on the grounds that plaintiff's warranty deed and their quitclaim deed defined the properties' respective boundaries and the survey depicted the boundary line contrary to plaintiff's allegations.

Plaintiff filed an amended complaint that added a second count that alleged that she owned the disputed property by adverse possession. Plaintiff claimed that she possessed the property since 1999 when she and her husband acquired equitable title by land contract. She alleged that the land had been treated as a place for yard and leaf disposal and that she openly treated the land as her own because it was her land. She alleged that the original owner of the disputed land never made use of the property, but she had used it since 1999. She alleged that she trimmed the grass and trees, planted flowers, buried her dog, and treated the land as her property continuously since 1999. She requested that the court order that she satisfied the elements of adverse possession and order defendants not to interfere with her rights and quiet title to the property in her. Defendants ultimately answered the amended complaint and asserted that Matis conveyed the disputed property to them by quitclaim deed recorded on October 18, 2020. Defendants denied that plaintiff owned and maintained the property for 22 years and any use of the land by plaintiff had been permitted by the previous owner.

The trial court conducted a bench trial at which plaintiff, her significant other, Guenther Bastian, and her neighbor to the north testified. After plaintiff closed her case-in-chief, defendants moved for a directed verdict on the ground that plaintiff failed to establish the elements of her claim of adverse possession and the trial court agreed that she failed to prove the hostility element and granted defendants' motion. Plaintiff now appeals.

## II. STANDARD OF REVIEW

A claim for adverse possession is equitable in nature. See *Mulcahy v Verhines*, 276 Mich App 693, 698; 742 NW2d 393 (2007). "This Court reviews de novo equitable actions to quiet title." *Burkhardt v Bailey*, 260 Mich App 636, 646-647; 680 NW2d 453 (2004). This Court reviews de novo a trial court's conclusions of law following a bench trial, and reviews the court's factual findings for clear error. *Walters v Snyder*, 239 Mich App 453, 456; 608 NW2d 97 (2000). "The clear-error standard requires us to give deference to the lower court and find clear error only if we are nevertheless left with the definite and firm conviction that a mistake has been made." *Arbor Farms, LLC v GeoStar Corp*, 305 Mich App 374, 386-387; 853 NW2d 421 (2014) (quotation marks and citation omitted). Decisions regarding equitable claims, defenses, doctrines,

and issues are reviewed de novo. *Dyball v Lennox*, 260 Mich App 698, 703; 680 NW2d 522 (2004).

## III. ANALYSIS

Plaintiff argues that the court erred by holding that she failed to establish the hostility element of her adverse possession claim. We disagree.

"A party claiming adverse possession must show clear and cogent proof of possession that is actual, continuous, open, notorious, exclusive, hostile, and uninterrupted for the relevant statutory period." *Marlette Auto Wash, LLC v Van Dyke SC Props, LLC*, 501 Mich 192, 202; 912 NW2d 161 (2018) (citations omitted). The statutory period is 15 years. MCL 600.5801(4). This Court has previously described the clear and cogent evidence standard as "more than a preponderance of the evidence, approaching the level of proof beyond a reasonable doubt." *Walters v Snyder*, 225 Mich App 219, 223; 570 NW2d 301 (1997). "The evidence offered in support of adverse possession must be strictly construed with every presumption being exercised in favor of the record owner of the land." *Rozmarek v Plamondon*, 419 Mich 287, 292; 351 NW2d 558 (1984). "When the elements of adverse possession have been met, the law presumes that the true owner, by his acquiescence, has granted the land, or interest to the land, so held adversely." *Marlette Auto Wash*, 501 Mich at 202 (quotation marks and citation omitted). "[T]o make good a claim of title by adverse holding the true owner must have actual knowledge of the hostile claim, or the possession must be so open, visible, and notorious as to raise the presumption of notice to the world that the right of the true owner is invaded intentionally and with a purpose to assert a claim of title adversely to his, or so patent that the owner could not be deceived, and such that if he remains in ignorance it is his own fault. . . ." *Doctor v Turner*, 251 Mich 175, 186; 231 NW 115 (1930) (citations omitted). A mere permissive possession or one consistent with the title of another can never ripen into a title by adverse possession." *Burns v Foster*, 348 Mich 8, 15; 81 NW2d 386 (1957).

"The term 'hostile' as employed in the law of adverse possession is a term of art and does not imply ill will; rather, hostile use is that which is inconsistent with the right of the owner, without permission asked or given, and which would entitle the owner to a cause of action against the intruder." *Houston v Mint Group, LLC*, 335 Mich App 545, 559; 968 NW2d 9 (2021) (quotation marks and citation omitted). Recognition that someone has superior title, as opposed to knowledge or belief someone has superior title, destroys the adverse nature of possession. *Smith v Feneley*, 240 Mich 439, 441; 215 NW 353 (1927). An attempt to purchase property defeats a claim of adverse possession where doing so the claimant recognized superior title rather than an attempt to quiet title. *Id.* at 443. An adverse possession claim of title is asserted by entering and occupying the land with the intent to keep it, regardless of another's right or title. *Id.*

In her original complaint, plaintiff claimed ownership of the disputed land by right and sought to quiet title to her land. Her claim was founded on a mistaken belief regarding the actual dimensions of her property which she revealed in her trial testimony that she based her belief on conversations with Reau, the grantor of her property, and a misreading of her warranty deed. The legal description of plaintiff's property in the warranty deed specifically excepted the southern 200 feet of the described parcel of land. The survey that defendants obtained when the dispute arose confirmed the dimensions set forth in plaintiff's warranty deed and described a straight-line

boundary at the southern edge of plaintiff's land separating her land from defendants' land. Plaintiff, therefore, could not prevail on her claim to quiet title to the disputed property based on her deed. Apparently, in recognition of the weakness of her initial claim, plaintiff amended her complaint to assert a claim of adverse possession.

Significantly, the record is bereft of any specific description of the dimensions and location of the property plaintiff claims she owns by adverse possession. At trial, plaintiff used a demonstrative exhibit prepared by her counsel and some photos that depicted the land to advise the trial court of the nature of the disputed land. Plaintiff also presented exhibits created by Bastian from Google Earth aerial photos on which he drew lines using the Google Earth program to describe what he believed is plaintiff's property. The witnesses' testimonies do not specify what the triangular-shaped disputed land is or where it is located other than that it is at the southern end of plaintiff's property. Further, although plaintiff testified that she claimed ownership by adverse possession the land up to the tree line on the south end of her property, she also testified that she owned land three or more feet further south of that tree line somewhere into the trees.[1] Nevertheless, plaintiff's trial exhibits and the witnesses' testimonies may have adequately revealed the location of the disputed land to the trial court to enable the court's analysis.

De novo review of the record indicates that plaintiff testified that she cared for and maintained the disputed land by mowing the grass, removing debris, removing a tree that fell from her land that is not in dispute onto the disputed land, and removed some old stumps from the disputed land, the number of which she did not say. She affirmed that she possessed the land openly, continuously, and exclusively. In further support of her affirmation of these elements, she testified that she buried a cat and two dogs on the disputed land, and stored various personal belongings like a trailer, a boat, and a pontoon boat on that property at some unspecified time for an unspecified duration. Nevertheless, the trial court could reasonably conclude from this evidence, that plaintiff satisfied her burden of proof respecting possession that was actual, continuous, open, and uninterrupted for the relevant statutory period. The trial court, therefore, did not err in this regard.

Respecting her exclusive and notorious possession of the disputed land, plaintiff affirmed that she exclusively used the land and testified that she mowed the grass, removed rocks and debris, and stored some personal belongings on it. She also testified that she created a woodpile on the disputed land from fallen trees harvested on her property. Plaintiff further testified that she exclusively used the disputed land. Bastian testified that he and plaintiff maintained the disputed land since 2004 by mowing it. He testified regarding a woodpile visible in the background of some of the photos to indicate that they placed a woodpile on the disputed land. The trial court could reasonably conclude from the evidence that plaintiff's actions sufficiently gave notice of her possession and exclusive use of it. The trial court did not err in this regard.

Plaintiff contends that her possession and use sufficed to demonstrate the hostility of her adverse claim. De novo review of the record evidence, however, indicates that plaintiff testified

---

[1] The aerial photo plaintiff included in her appendix does not indicate the specific location or dimension of the disputed land. It shows a meandering tree line on the southern end of what Bastian marked with yellow lines.

that the titleholder of the adjacent property on which the disputed land lies periodically used the land for recreational purposes infrequently during the early years of her residency on her property. Bastian testified that, since 2004, he saw only four people at the neighbor's property. He admitted that the previous owner was not aware of plaintiff's use of the property since 2004. Plaintiff's testimony indicates that the titleholder did not raise any issue regarding her use of the disputed land. One can infer from her testimony that the titleholder observed her use, approved, and permitted it. "Peaceable occupation or use by acquiescence or permission of the owner cannot ripen into title by adverse possession, no matter how long maintained." *Ruggles v Dandison*, 284 Mich 338, 342; 279 NW 851 (1938) (citation omitted). "In the adverse-possession context, 'hostility' refers to use of property without permission and in a manner that is inconsistent with the rights of the true owner. *Jonkers v Summit Twp*, 278 Mich App 263, 273; 747 NW2d 901 (2008), citing *Wengel v Wengel*, 270 Mich App 86, 92-93; 714 NW2d 371 (2006). The record lacks any evidence of plaintiff engaging in conduct, of which the titleholder was aware, from which the titleholder could discern that plaintiff claimed an ownership interest hostile to his own. The evidence does not establish that plaintiff deprived the titleholder of ownership or right to the property nor did her conduct interfere with the titleholder's use. Further, Bastian testified that he and plaintiff sought to purchase the property from the titleholder about 10 years ago, but the titleholder was not selling it. Bastian also testified that when they heard that the woman who owned the property died about three years ago they investigated what was happening with the property. This evidence established that plaintiff recognized that someone other than herself held superior title. Such conduct defeated her claim of adverse possession. *Feneley*, 240 Mich at 441, 443.

The record does not contain clear and cogent evidence that demonstrates the hostility element of plaintiff's claim. The trial court could reasonably conclude from the evidence that plaintiff failed to establish with clear and cogent evidence the hostility element of her adverse possession claim. The trial court, therefore, did not err by granting defendants' motion for directed verdict.

Affirmed.

/s/ Michael J. Kelly
/s/ James Robert Redford